Marvin *v.* Ellwood.

---

## MARVIN *vs.* ELLWOOD and TITUS.

A simple bill of interpleader cannot be sustained by a party who has, in any way, lent himself to further the claims of either of the parties who claim the fund in controversy, or to aid one, in obtaining the possession thereof, to the exclusion of the other.

A person in possession of a fund, who stands in the same relation, in respect to the fund, to each of the parties claiming it, may receive an indemnity which is tendered to him by either, and may pay over the fund to the person giving such indemnity. But upon doing so his right to file a bill of interpleader is determined.

A simultaneous offer, by the possessor of the fund, to both claimants of such fund, to pay it over to either who will fully indemnify him, and save the expense of filing an interpleading bill, will not be deemed collusion, where both neglect and refuse to give such indemnity ; and where both claimants consent to give such indemnity he can safely receive it from either.

The relation in which an attorney stands to his client, will not permit him to file an ordinary bill of interpleader, upon every claim made to the fund which has been collected by him for his client.

It is the duty of an attorney to pay over to his client money collected for him, whenever he can do it with safety ; and even when there is doubt whether the securities, upon which the money was collected, did in fact belong to such client, all that he can require from his client, on paying over the money to him, is an indemnity.

And where he is not satisfied with the responsibility of his client, he should so inform him ; and should offer to pay over the money to him upon his giving him a sufficient indemnity.

Whether, under any circumstances, an attorney can sustain a bill of interpleader, against his client and a stranger, where the client is wholly irresponsible, and where he refuses to indemnify the attorney against the claim of such stranger which is apparently well founded ? *Quære.*

To sustain such a bill, the complainant, at least, must show that he has good reason to believe the adverse claim is well founded, and that there is no possibility of protecting himself from loss by any other means than by the interference of the court.

Marvin *v.* Ellwood.

Where the client of an attorney assigns the demand, on which the suit is commenced, and the assignor afterwards attempts to repudiate the assignment, as having been obtained by fraud, or as being invalid for any other cause, the attorney, if he has not recognized either the assignor or assignee as his client, subsequent to the assignment, may file a bill of interpleader; as standing in the same privity with each.

*It seems,* however, in such a case, that the court in which the suit was pending at the time of the alleged assignment, if both the parties claiming to be the real plaintiffs are within its jurisdiction, has the power to protect the attorney; by directing the money to be brought into court, and restraining the real as well as nominal plaintiff from molesting him on account thereof.

A bailee or agent, who has received property as such, is at all times at liberty to show that his bailor, or principal, has parted with his interest in the property subsequent to the bailment, or to the delivery to the agent. But such bailee or agent cannot, at law, dispute the original title of the person from whom he received the property.

A strict bill of interpleader cannot be maintained by a bailee, or agent, to settle the conflicting claims of bailor, or principal, and a stranger who claims the property by a distinct and independent title.

Neither can an attorney maintain such a bill, to settle the claim to money which he has collected for his client; where a mere stranger claims the money, upon the ground that the security upon which the money was collected was originally obtained by his client wrongfully.

THIS was an appeal from a decree of the vice chancellor of the fourth circuit, dismissing the complainant's bill of interpleader; with costs, as to the defendant Ellwood, and without costs as to the other defendant.

In the latter part of 1836, Asa Farr left a note, against O. H. Dibble & Co. with the complainant for collection; which note was originally given to the mercantile firm of Farr & Farnham, and was endorsed, in the copartnership name, by J. G. Farr, one of the members of that firm, to Asa Farr. Judgment was recovered upon the note, in July, 1837, in favor of Asa Farr, for $511,32, besides costs. And, on the 15th of October thereafter, Asa Farr sold and assigned the judgment to the defendant Ellwood; to collect the same of Dibble & Co., or to receive the moneys thereon from the complainant, the attorney of the assignor. Notice of this assignment was immediately given to the complainant, who informed Ellwood, by letter, that he had brought a suit against the sheriff, for neglecting to return the execution against Dibble & Co., which suit had not then been

Marvin v. Ellwood.

tried. Judgment was afterwards recovered against the sheriff, for the amount of the debt and costs in the judgment against Dibble & Co. The complainant, and his law partner G. L. Marvin, received upon this last judgment $597, between the 1st of January, 1840, and the 10th of May in the same year; of which sum $400 was received in the month of January, and the residue in May.

The defendant Titus, who had been appointed a receiver in a creditor's suit, brought upon a judgment against the members of the firm of Farr & Farnham, claimed the proceeds of the debt against Dibble & Co. upon the alleged ground that one of the copartners had transferred the note to Asa Farr, in payment of his individual indebtedness, and in fraud of the creditors of the firm; and a correspondence took place between Titus and the complainant, in the latter part of January and the beginning of February, 1840, in which the latter was apprised of that claim. About the 20th of June in that year, the defendant Ellwood sent an attorney to Buffalo, where the complainant resided, to obtain a statement of the moneys received by the latter upon the judgment against the sheriff, and to obtain payment thereof. And having received from him a statement, which Lake, the attorney, believed to be false and deceptive, the latter gave notice to the sheriff that he must not pay the residue of the judgment to Marvin, as the attorney on record. Ellwood subsequently applied to the supreme court, where the judgment against the sheriff was recovered, to compel payment of the money; and he obtained an order that Marvin pay into court the $597, after deducting the attorney's costs, within ten days, or that an attachment issue against him. And thereupon the complainant, who had previously offered to pay over the money of his client to the adverse party upon being indemnified by him, went to New-York, to meet Titus; and while there the bill of interpleader in this suit was filed, and an injunction was obtained restraining Ellwood from proceeding against him upon the order of the supreme court.

To that bill Ellwood put in his answer, showing his right to the fund in question, as the assignee of the judgment against

Marvin *v.* Ellwood.

Dibble & Co.; and also putting in issue the allegations, in the complainant's bill, that such bill was not filed at the request of either party, and that the complainant did not collude with either. But he admitted that the complainant did not collude with him, and that the bill was not filed at his request. The defendant Titus, by his answer, claimed the fund, as belonging to the firm of Farr & Farnham, for the benefit of their creditors; but said nothing as to the allegations in the bill that there was no collusion with him. Replications were filed to both answers. And the complainant and both of the defendants took testimony in the suit; not only as to the matters stated in the bill, and put in issue by the answer of the defendant Ellwood, but also as between the defendants themselves, in relation to the right to the fund in question. The vice chancellor decided that the bill was improperly filed, for the following reasons; *First*, because the subject matter of the controversy arose from the relation of attorney and client, between the complainant and one of the parties; creating a different duty on the part of the former to Ellwood, from that which he owed to Titus; *Secondly*, because the complainant, after the assignment of the judgment, had promised to pay the money to Ellwood, when collected; and *Thirdly*, on account of collusion of the complainant with the defendant Titus; which collusion his honor considered as established by the proofs in the cause.

The following opinion was delivered by the vice chancellor.

WILLARD, V. C. The first question which arises in this case is, whether the bill is properly filed. When this cause was before the chancellor, on the motion to dissolve the injunction, he expressed the opinion that there was enough in the bill, if true, to sustain it as a bill of interpleader; but he also intimated that there were sufficient facts disclosed in the answer of Ellwood, if established by the proof, to entitle him to a dismissal of the bill.

Although the charge in the bill, that Titus, in January and February, 1840, had given notice to the complainant of his appointment as receiver of the effects of Farr & Farnham, and had required the proceeds of the note of Dibble & Co. to be paid to

him as such, is proved by the letters and testimony of Mr. Titus, it is nevertheless probable that no further steps would have been taken by Titus, to compel the complainant to pay over to him, had it not been for the suggestions of the complainant himself. In June, 1840, the defendant Ellwood, having become dissatisfied with the excuses of the complainant for his delay in paying over the money he had collected, took measures to compel him; and employed Mr. Lake as his attorney for that purpose. The requisite demand was made upon the complainant, and the sheriff was notified not to pay over any more money to him. The letters of the complainant to the defendant Titus, of the 20th and 29th of June, 1840, (*Exhibits No. 1 and 2*,) show the state of the complainant's feelings at that time. In the letter of the 20th of June, he apprises Mr. Titus that he, Titus, is the only person who can countermand the orders of Ellwood, and he offers on being indemnified, "to push the matter through, and get the money" for him, Titus. In the letter of the 29th, he speculates on the best mode of defeating the claim of Ellwood; suggests the expedient of having him summoned before the master, and advises Mr. Titus to send him, (complainant) a certified copy of the order under which he acts, and notice of a demand on the sheriff, requiring him not to pay to Ellwood, but to the complainant, or Titus. Exhibits No. 3, 4 and 5, being a continuation of the same correspondence, are of a similar character. The letter of Mr. Titus of the 3d of July, 1840, in answer to that of the complainant of the 29th of June, promises to exhibit to him a copy of the order appointing him receiver; states that he shall write to Ellwood, advising him that if he persists in his claim he shall summon him before the master; expresses the hope that the complainant will hand over the proceeds of the judgment; and promises to *indemnify* him for the same.

The allegation, in the answer of the defendant Ellwood, as to the consideration paid by him to Asa Farr, for the judgment, is proved; and there is no evidence impeaching the bona fides of the transaction between them. There is evidence also, to prove an indebtedness from Joseph G. Farr to Asa Farr, before the

transfer of the note against O. H. Dibble & Co., by the *former to* the latter. If the testimony of Farnham is received, and the complainant cannot object to it, while it shows that a partnership demand of Farr & Farnham was probably assigned by J. G. Farr to Asa Farr for an individual debt, it still disproves the assertion, in the bill, that the note was merely left with Asa Farr for collection. The testimony of Farnham repels the charge of any felonious or fraudulent taking of the notes of the firm by Joseph G. Farr. It proves that they were selected for the purposes of a collecting tour, and were probably taken with that design, and before the firm had failed. The allegation that Joseph G. Farr had a right to control the suit of Asa Farr against Dibble is unsupported by proof, and is in fact substantially disproved.

Although the suit of Asa Farr against Dibble, and the same against the sheriff, were in the name of Mr. Allen as attorney, it is admitted in the bill, and also proved, that he was the law partner of the complainant. The complainant, in his letter to the defendant Ellwood, of the 27th of October, 1837, recognizes him as the owner of the debt, and as his client in the suit against the sheriff. These facts, in connection with the pleadings, are all that are necessary to be adverted to in discussing the question, whether the bill can be sustained as a bill of interpleader.

The proper case for an interpleader, is where two persons claim from a third *the same debt,* or the *same duty.* (*See Doufy* v *Augrove,* 2 *Ves.* 310.) If the complainant, in such a case, does not know to whom the debt or duty belongs, and cannot otherwise be protected, he is entitled on paying the money into court to exhibit his bill. (*See* 2 *Story's Eq. tit. Interpleader.*) The complainant, however, must be as indifferent between the parties as a stakeholder. He must not collude with either, or receive an indemnity from either. If he is under a liability, independent of what arises from the possession of the fund, an interpleader will not lie. It is on this principle that there is no interpleader between landlord and tenant, or principal and agent. The liability in the case of a tenant, to his

landlord, is more extensive than that of a stakeholder; whether it arises from privity of contract or privity of estate. And in the case of principal and agent there is invariably a contract, express or implied, existing between them. (*See Crawshaw* v. *Thornton, 2 Mylne & Craig,* 1.)

The relation of attorney and client between the complainant and Ellwood, created a duty different from that which existed between the complainant and Titus. (*See 2 Story's Eq.* 122, § 816.) The one was that of confidence and trust; the other, merely the duty which one citizen owes to another. As attorney, the complainant was entitled to his costs from Ellwood. A voluntary payment to his client, of money collected by an attorney in that character, would always be a protection to him. Had Marvin paid to Ellwood the amount collected on the judgment, no court would have ordered him to pay it, or the same amount, to Mr. Titus. If the latter, as receiver, had desired to contest Ellwood's title to it, he should have done so in a suit with Ellwood; with or without making Marvin a party, according to circumstances. In general, a stranger cannot know that the attorney has funds in his hands, not paid over to his client, to which he can interpose a claim; unless the attorney himself in violation of his professional duty discloses the same. It would be contrary to sound morals, to permit him to sustain a suit in this court against his own client, and at the expense of the latter, in order to transfer the fruits of his suit to another party. Such a course would seem to be bidding a premium on professional infidelity.

In one of the cases, the chancellor has aptly compared the relation which the complainant, in a proper bill of interpleader, bears to the fund in controversy, to that of a stakeholder. (*Badeau* v. *Rogers, 2 Paige,* 209.) A person in that condition, ignorant of the rightful owner of the fund, and when the recovery against him, at the suit of one party, may not be a protection against the claim made by another, may well require the aid of this court to protect him. But even slight circumstances take from him the protection of the court. An indemnity from either party destroys the character of impartiality, and entitles

Marvin *v.* Ellwood.

the defendant to a dismissal of the bill. (*Stratham* v. *Hall*, *Turn. & Russ.* 30.)  So also does a promise to pay the debt to either party.  (*See remarks of Lord Cottenham in Crawshay* v. *Thornton*, 2 *Mylne & Craig*, 19.)  In the present case the complainant offered to pay to Titus, on being indemnified, and the latter, it seems offered him an indemnity as to the amount, dollar for dollar, but not against the costs; and upon that point they disagreed, and no indemnity was given.

The defendant Ellwood, in his answer alleges, that in the spring of 1838 the complainant promised to pay him the amount of the judgment against Dibble, as soon as it was collected.  An express promise to pay is not proved by the letters; although the complainant evidently recognized Ellwood as his client, and the person whose directions were to be obeyed concerning the demand in suit.  In the testimony of Mr. Lake, before the examiner, the complainant called for the confessions of Ellwood, in order to prove a notice of Titus' claim; and thus made the whole statements of Ellwood, uttered at the same time, evidence in this cause.  In this manner, the defendant alleges he has proved the truth of the answer in this respect, if indeed it required confirmation.  I am inclined to give credit to the answer of Mr. Ellwood, in this particular.  It is supported by several other circumstances, and is under oath.  The contrary is not directly affirmed in the bill; and if it were, the bill is contradicted in so many material parts of it, as to impair all confidence in the truth of it, as matter of evidence.

To sustain this bill of interpleader would create a dangerous precedent; it is a bold innovation, at war with established principles.  If Mr. Titus, as receiver, had a just claim to the fund, and wished to arrest it in the hands of the attorney, he should have filed a bill against Ellwood, making Marvin a party defendant with him, if necessary; so as to adjust his lien upon the fund in the same suit.  In such a suit, if the attorney acted in good faith, he would meet with protection.

I think also, the averment in the bill denying collusion is disproved by the defendant Ellwood.  The whole course of the evidence shows that the complainant, since the attempt of Ell-

wood, in 1840, to obtain the money out of his hands, by an order of the supreme court, has not acted like a neutral. His correspondence with Titus, which is made an exhibit, shows a strong and decided partiality for the claim of the defendant Titus, against that of his own client, Ellwood. And Mr. Titus favored those advances which the complainant made. No bad faith is imputed to him, as he was merely acting for others, and doubtless ignorant of the true state of Ellwood's title. His answer does not put in issue the collusion with the complainant. He merely denies the collusion with which he is charged in the bill, and there being no such charge, the denial is a nullity.

I think, on the whole, the bill of interpleader is not properly filed, for the reasons above stated, which may be briefly recapitulated thus : 1st. The subject matter of the controversy, arising from the relation the complainant bore to the defendant Ellwood that of attorney and client, creating a different duty from that between him and Titus; 2d. The fact that the complainant at one time promised to pay the defendant Ellwood the money when collected; 3d. The collusion between the complainant and Titus, to the injury of Ellwood.

The bill must be dismissed, and the complainant must pay the costs of the defendant Ellwood. As respects Titus, he is not entitled to costs as against the complainant, nor should he pay those of the latter. The bill as to him will be dismissed without costs.

I have not deemed it necessary to decide the question on the motion to suppress the deposition of Farnham. His testimony was not injurious to the defendant Ellwood, as between him and the complainant. Nor have I passed upon numerous other objections to testimony with which the case abounds. The cross-examination of Mr. Lake, by the complainant, exhibits one of those abuses of the privilege of counsel, which, to the honor of the profession, rarely occurs. If the complainant claimed no right in opposition to Ellwood, the whole cross-examination by him was useless ; and if he did claim such right, an interpleader cannot lie. It shows, among other things, that the complainant stood otherwise than indifferent between the defendants.

Marvin v. Ellwood.

The counsel for Ellwood seems to suppose, that on dismissing the bill, the court must decide the right to the fund in question. I do not so understand the practice. The bill being dismissed, the parties are remitted to their legal rights as they stood when the injunction was allowed. Mr. Ellwood can proceed with his motion in the supreme court, to obtain the money, or take such other steps to collect it as he may deem proper.

*Le Grand Marvin,* the appellant, in person.

*J. Rhoades,* for the respondent Ellwood.

*D. Greig,* for the defendant Titus.

THE CHANCELLOR. I agree with the vice chancellor, that there is such evidence of collusive conduct, on the part of the complainant in this suit, to aid the claim of the defendant Titus, at the expense of the interest of his own client, that if no other objection existed, this bill of interpleader ought not to be sustained. A party who comes into this court as a complainant, in a simple bill of interpleader, must not have lent himself in any way to further the claim of either party to the fund in controversy, or to aid one in obtaining the possession thereof to the exclusion of the other. A person who is in possession of a fund, which is claimed by two different parties standing in the same relation to him in respect to such fund, may indeed receive an indemnity which is tendered to him by either, and may pay over the fund to the person giving such indemnity. But upon doing so, his right to file a bill of interpleader is of course determined. And a simultaneous offer to both claimants, to pay over the fund to either who will fully indemnify him, and save the expense of filing an interpleading bill, would not be considered collusion in case both neglected or refused to give him such indemnity. If both consented to give such indemnity, he could safely receive it from either. For the giving of the indemnity would relieve him from the necessity of filing a bill of interpleader, and the question of collusion would never arise. Here, it is impossible, from

Marvin v. Ellwood.

the whole proceedings, and testimony in the cause, to resist the conclusion that the complainant was anxious to aid the defendant Titus in obtaining the proceeds of the judgment in controversy; after the demand made upon him at Buffalo, by the agent of Ellwood.

I agree with the vice chancellor also, in thinking that the relation which an attorney bears to his client, will not permit him to file an ordinary bill of interpleader, upon every claim made to the fund collected by him for his client. It is the duty of an attorney who collects money, for a client, to pay it over to such client whenever he can do it with safety. Even where there is a doubt whether the securities upon which the money was collected did in fact belong to his client, all that he has any right to ask is an indemnity from his client. And if he is not satisfied with the responsibility of his client, it is his duty to tell him so, and to offer to pay him the money if his client is willing to give such indemnity. Whether, under any circumstances, this court would sustain a bill by an attorney, against his client and a stranger, where the client was wholly irresponsible and refused to indemnify the attorney against the claim of a third person which was apparently well founded, I am not prepared to decide. To sustain such a bill, the complainant must at least show that he has good reason to believe that the adverse claim is well founded, and that there is no possibility of protecting himself from loss by any other means than by the interference of this court. That, however, is not this case. Here there was no offer by the complainant to pay over the money to his client upon being indemnified against the claim of Titus. On the contrary, the attorney studiously avoided any intimation to his client that he would pay him his money upon any terms.

I speak of Ellwood as the client of Marvin, because the suit against the sheriff was prosecuted for his benefit, after the notice of the assignment by Asa Farr, the original plaintiff in the suit. By that assignment, and the notice thereof which was given to the complainant, the relation of attorney and client between Marvin and Farr, ceased to exist; and the latter was not liable to the attorney for the costs of the subsequent proceedings.

The subsequent prosecution of the suit, and the receiving the money from the defendant, upon the judgment subsequently recovered, was in the character of attorney for the assignee. A different question might perhaps have arisen, if Asa Farr had attempted to repudiate the assignment as having been obtained by fraud, or as being invalid for any other cause. In that case, the attorney, if he had not recognized either as his client subsequently to the alleged assignment, might perhaps have been in a situation to file a bill of interpleader; as standing in the same privity to each—to Farr the nominal plaintiff, by virtue of the original retainer—and to Ellwood by the alleged assignment and transfer of the subject matter of the suit. I am inclined to think, however, that in such a case the court in which the suit was pending at the time of the alleged assignment, would have had the power, if both the parties who claimed to be the real plaintiff were within its jurisdiction, to settle the matter between them, so far as was necessary to protect the attorney; by directing the money to be brought into court, and by restraining the real as well as the nominal plaintiff from molesting him on account thereof. To that extent, I presume the supreme court has jurisdiction over its suitors. But it probably had no such power over the defendant Titus, who was not a party, in fact or in interest, in the suit in that court.

A bailee or agent who has received property, as such, is at all times at liberty to show that his bailor or principal has parted with his interest in the property subsequent to the bailment, or to the delivery to the agent. But such bailee or agent cannot, at law, dispute the original title of the person from whom he received the property. And Mr. Justice Story, after an examination of the cases upon the subject of interpleader, arrives at the conclusion that the same principle applies to this court; and that a bill of interpleader cannot be maintained by the bailee, or agent, to settle the conflicting claims of the bailor, or principal, and a stranger who claims the property by a distinct and independent title. (2 *Story's Eq.* 122, §§ 816, 817.) Although some of the decisions cannot well be reconciled with this principle, I think he is right so far as regards a strict bill of interpleader.

And if so, upon the same principle, an attorney cannot sustain a bill of interpleader, to settle the claim to money which he has collected for his client, where a mere stranger claims the money, upon the ground that the security upon which the money was collected was originally obtained by the client wrongfully.

I am satisfied, therefore, that this bill was improperly filed, and that the decree of the vice chancellor, directing it to be dismissed, with costs as to Ellwood, is not erroneous.

The decree must be affirmed with costs as to the respondent Ellwood ; who alone asks for costs upon this appeal.