## SMITH'S EXECUTORS vs. WILEY.

1. A court of probate in this State can confer no authority on an administrator or guardian to receive the rent of lands lying without the limits of the State; and his receipt of the rents being in his own wrong, the law implies an undertaking on his part to pay it to the persons who, in justice and equity, are entitled to it.

2. And if the land belongs to several tenants in common, each one may waive the want of authority on the part of the administrator or guardian, and maintain debt or *indebitatus assumpsit* for his separate portion of the rents.

3. In debt on a refunding bond by a guardian, the defendant may set off his portion of rents received by the plaintiff, of lands lying without the limits of the State, belonging to the defendant and others as tenants in common.

ERROR to the Circuit Court of Perry.

Tried before the Hon. GEO. D. SHORTRIDGE.

DEBT on a refunding bond, by Thomas H. Wiley against Joseph W. Smith. The defendant pleaded, "in short by consent, *nil debet*, payment and set-off." The defendant having died pending the suit, it was revived against his executor; and at the Spring term, 1852, there was a verdict and judgment for the plaintiff. The exclusion by the court of certain evidence offered by the defendant under his plea of set-off, forms the only assignment of error. This evidence appears at length in the opinion of the court.

I. W. GARROTT, for plaintiffs in error:

1. *Indebitatus assumpsit* lies whenever one person has moneys which, *ex æquo et bono*, belong to another. Hitchcock v. Lukins, 8 P. 333, (336-7-8;) Wilson v. Sergeant, 12 Ala. Rep. 778.

2. Whenever *indebitatus assumpsit* lies for moneys, they are the subject of set-off. George v. C. & M. R. R. Co., 8 Ala. 234; Smith v. Hine, 14 Ala. 201.

3. On the death of Robert Smith, his lands descended to

his heirs at law, of whom the testator of plaintiff in error was one; and they became tenants in common of these lands. 3 Bouvier's Inst. 309; 4 Kent's Com. 367.

4. An action in the name of all the tenants in common, or a separate action in the name of each one at his election, for his share, lay against the defendant in error for a recovery of the moneys received by him. 3 Bouvier's Inst. 137, § 2658; 1 Comyn's Dig. 44, § 3; Broom on Parties to Actions 46, 56 Law Lib.; Cole v. Patterson, 25 Wendell 456; Brigham v. Eveleth, 9 Mass. 558; Jones v. Harradin, ib. 540, note 3; 1 Ch. Pl. top p. 12; 1 Ld. Raym. 340.

5. Defendant in error was not the tenant of the lands, and in receiving the moneys without authority, was a wrong-doer. The question of tenancy in common has nothing to do with the case. The law implies that he received the money for each one of the heirs to whom it belonged, and also implies a promise to each; the promise resting on the title of each. There was no agreement or understanding, either amongst the heirs or between them and defendant, that defendant should receive these moneys. The heirs, therefore, could not act for each other, and the receipt of one of them to defendant, for all the moneys, would not have relieved him. This is a test showing that they are not tenants in common; such tenants have this right. Decker v. Livingston, 15 J. R. 479.

6. Trover can be brought by one tenant in common, in his own name, for his share of a chattel which has been converted. 1 Ch. Pl. 147; McGowan v. Young, 2 S. 276; Parminter v. Kelly, 18 Ala. 716; Smyth v. Tankersley, 20 Ala. 212. Where the chattel has been converted into money, the tort may be waived and assumpsit brought. Upchurch v. Norsworthy, 15 Ala. 705. The same principle applies where money has been converted. The defendant, then, having converted the money received by him in Mississippi, is liable to each heir for his share.

7. The court clearly erred in excluding the evidence from the jury. The intent with which defendant received these moneys should have been left to the determination of the jury. They might have inferred from the facts proved, and others which might have been introduced, that defendant intended to pay each heir his proper share.

8. Wiley, as guardian, had no right to receive money or property belonging to his ward in Mississippi, because the jurisdiction of orphans' or probate courts does not extend beyond the limits of the State. Smith's Heirs v. Smith's Adm'r, 13 Ala.; Story's Conflict of Laws 462.

9. As to the extent to which the law goes to sustain the equitable action of *indebitatus assumpsit*, see Harris v. Davis, 1 Ala. 259.

R. H. SMITH and JOHN, *contra:*

1. The question raised by the bill of exceptions, is the rejection of the testimony offered by the plaintiff in error in the court below, to establish a set-off. This ruling of the court was correct: 1. Because the claim for rent, which was received as stated, was not a set-off. Smith & Crawford, Ex'rs, v. Hine, Adm'r, 14 Ala. 201; Vaught v. Welborn, 16 Ala. 377. 2. This rent belonged jointly to four children, if in fact it belonged to any of them, and could not be a set-off for want of mutuality. This position is sustained by all the authorities. 3. Because this evidence impeached, collaterally, the settlements in the Orphans' Court, of both the guardianship and administration account. A judgment cannot be thus collaterally impeached.

2. The money attempted to be used as a set-off, was received by Wiley for the rent of land which descended to four persons as heirs of R. Smith, who are named in the bill of exceptions. They held the lands as coparceners, and the rent belonged to them jointly. One coparcener cannot sue separately for his portion of rents accruing to him and his fellows. 25 Com. Law Rep., Decharmes v. Horwood, 228, reported in 10 Bingham, 526; 1 Chitty's Plead. 12, (13,) Title Joint Tenants and Coparceners.

3. The statutes in this country have only changed the nature of tenancy so far as the right of survivorship is concerned; consequently, Smith's children mentioned in the bill of exceptions are strictly coparceners. But if they can be regarded as tenants in common, still, tenants in common must join as to personalty; and where there has been no severance, they must join for rents. Decher v. Livingston et al., 15 John. 479; 2 Bouv. Inst. 310, § 1876; 2 Bacon's Abr. Title Coparceners, "B." 356.

4. Consequently, whether these parties are coparceners or tenants in common, the rule is, that they must join in actions relating to the personalty; and if so, one cannot set-off his share of the rent. If heirs could thus sever, any number of actions might be brought against a party, and thereby he might be ruined. No matter how many persons take by descent, they are all of them but one heir. This is very persuasive to show, that but one suit can be brought until a severance is made.

5. Wiley was not a wrong-doer in receiving this rent, but received it in good faith. He will, therefore, be a trustee for those entitled, and this court treats the rent in his hands as a trust fund; consequently, a bill in chancery is the proper remedy, if any exists, because in a court of chancery alone can the rights of the parties be fully and properly adjusted. Terry v. Furguson, Adm'r, 8 P. 500; Smith's Heirs v. Smith's Adm'r, 13 Ala. 329.

6. This money cannot be regarded as assets; but, if it should be so treated, a distributee cannot maintain an action at law, except as the statute directs, for his distributive share of the estate. Wilson v. Long, 12 S. & Rawl. R. 58.

7. As against the heirs, the widow is entitled to the rent of the land assigned her as dower, from the death of the ancestor or husband, in a court of equity. But a court of law will not probably give her this rent; it is doubtful, at least, what would be the common law rule on the subject. Suppose, then, each of these children be allowed a separate action for the rent, and then the widow recovers in a bill in chancery. This is clearly unjust. How, then, can a court at law adjust these rights? This view of the subject shows clearly that the testimony was properly excluded. Beavers v. Smith, 11 Ala. 112; Inge v. Murphy, 14 Ala. 289; Johnson v. Elliott, 12 Ala. 289.

8. It does not follow, simply because of the facts shown, that the heir is entitled to the rent; because, the rents may, under the statute, be applied in course of administration. This rent may have been received from the administrator in Mississippi. It may in fact belong to the widow; and under the fact, that the rent has been already accounted for in the guardianship account, the burden of proof was on the defend-

ant; and as the proof does not even show a *prima facie* case, even admitting the law above stated to be incorrect or inapplicable, therefore the ruling of the court was correct, for no other testimony was introduced by the defendant.

9. The facts stated in the bill of exceptions show, that the facts, admitting the law, authorize the set-off. The defendant should not be entitled to use this fund as a set-off, because he is not in good conscience entitled to it.

CHILTON, C. J.—Wiley brought his action of debt against Joseph W. Smith, in the County Court of Perry, which, after the late statute abolishing the civil jurisdiction of that court, was removed into the Circuit Court of that county, upon a refunding bond given by said Smith to him in 1844, in the penal sum of five thousand dollars, the condition of which recites, " that, whereas the said Thomas H. Wiley, as guardian of the said Joseph W. Smith, has accounted for and paid over to said Smith the sum of seventeen thousand four hundred and eighty-nine dollars and eighty-eight cents, (including his account for support and maintenance during his guardianship :) Now, if it shall hereafter appear that the sum of $17489 $\frac{88}{100}$ is more than the said Joseph W. Smith is entitled to receive of and from the said Wiley, his guardian as aforesaid, from the settlement of his said guardian's accounts in the Orphans' or County Court of Perry county, and the said Joseph W. do, in case of such excess so appearing, immediately repay and refund such excess to said Thomas H. Wiley, then said obligation to be void," &c.

The plaintiff below read said bond in evidence, and then produced a transcript of the record of the final settlement of his guardianship, made on the 25th day of October, 1845, with the Orphans' Court of Perry county, by which it appears that he had over paid the said Joseph W. the sum of one hundred and fifty $\frac{55}{100}$ dollars, which was stated by the Orphans' Court as due to the guardian from the said Smith, who had then arrived to full age, and the said Wiley was thereupon fully discharged as said guardian. The plaintiff here rested his cause.

The defendant then (now the plaintiff in error) offered proof

conducing to show, that Wiley had become the administrator of Robert Smith, deceased, in 1841; that said Robert died seized and possessed of certain real estate in Monroe county, in the State of Mississippi, and that said Wiley, from December, 1841, to the 31st of January, 1846, had collected rents due on account of said real estate in Mississippi, amounting to $3344 $\frac{80}{100}$, of which sum eight hundred and ninety-seven dollars and fifty cents had been collected by him after the settlement of his accounts as guardian of said Joseph. Defendant further offered to prove that said Wiley, on a settlement with the Orphans' Court of Perry county of his administration of said Robert Smith, made on the 12th day of October, 1844, had charged himself with the rents received on account of said land up to that time; but that on a subsequent application to the same court, made on the 18th May, 1847, he obtained a decree in said Orphans' Court, correcting the error, and giving him credit for said sum so received as rent, and that he had never accounted for the same; that there were four heirs of said Robert Smith, the said Joseph W. Smith being one of them.

This proof was excluded, and the defendant excepted; and the only question before us is, whether the interest or portion to which Joseph W. Smith was entitled, in the rents collected by Wiley, constitutes a good set-off in this action. This resolves itself into another question, as to whether Joseph W. Smith could have brought a separate action of debt or *indebitatus assumpsit*, or whether he must unite with the other heirs of Robert Smith in an action to recover. If he could have sued for his proportion of the sum received by Wiley, without joining the other heirs, then it is clear the proof was improperly rejected, as in that event the sum due would constitute a valid set-off.

It is conceded that the heirs of Robert Smith were entitled to the rent of the Mississippi lands; and that such rents constituted no part of the assets of his estate, was decided by this court in Smith's Heirs v. Smith's Adm'rs, 13 Ala. Rep. 329. Neither could the Orphans' Court of this State confer upon the administrator of Smith the authority to receive them. It follows, therefore, that the rents for the Mississippi lands were not received by Wiley as administrator.

Neither do we think the Orphans' Court of Perry county could have conferred on Wiley, as guardian for one or all of the heirs, the authority to rent the land situated without the limits of this State; for we see no difference, in principle, between an administrator and guardian, so far as respects the extra-territorial powers of the court. As, therefore, he could not have been vested with a rightful authority to lease the land and receive the rents in Mississippi, it follows that Wiley received them in his own wrong. 13 Ala. Rep. 329; 7 ib. 906; 8 ib. 380; Story's Conflict of Laws, 414.

Having received the money in his own wrong, the law implies an undertaking on his part to pay it to the persons who in justice and equity are entitled to it. By receiving rent for the land from the person to whom he had leased it without authority, Wiley occupies no better condition, in respect to such rent, than the tenant himself; and as the tenant was a wrong doer, and liable separately, as we shall presently see, to each of the owners of the land, who were tenants in common, for his share, so Wiley, who has taken his place, as respects the payment of the rent, cannot complain that he has subjected himself to the separate actions of the respective tenants in common.

As a general rule, tenants in common of land are entitled to the rent, each for his share, so that each may take a separate distress, or maintain a separate action. 3 Bou. Inst. 137. Judge Kent, in the fourth volume of his Commentaries, page 368, mar., says: "If tenants in common join in a lease, it is, in judgment of law, the distinct lease of each of them; for they are separately seized, and there is no privity of estate between them. They may enfeoff and convey to each other, the same as if they dealt with a stranger. They are deemed to be seized *per my*, but not *per tout;* and consequently they must sue separately in actions which savor of the realty, but they join in actions relating to some entire and indivisible thing, and in actions of trespass relating to the possession, and in debt for rent, though not in an avowry for rent."

We cannot well understand how the joining in a lease by several tenants in common, leaves the lease in judgment of law the distinct lease of each, and yet that one of them should be able to release the rent due upon such lease to the others;

nor how it is, in legal contemplation, the lease of each of the lessors, and yet that each should not be entitled to his action upon it. Such, however, is clearly the doctrine asserted by Judge Kent, and by the Supreme Court of New York.

In Austin et al. v. Hall, 13 Johns. Rep. 286, two of several heirs executed a release to the defendant, of all claim to damages for a trespass upon land descended to the heirs from their father, which release was in consideration of six cents. Held, in an action of trespass *quare clausum fregit*, for a trespass on the land and an eviction of the plaintiffs, the release was a bar to the action, as they were all bound to join, and the release constituting a good bar as to the tenants in common who released, was a complete defence as to all. The same doctrine was afterwards affirmed by that court in Decker v. Livingston, 15 Johns. Rep. 479, and Hill v. Gibbs, 5 Hill 56 ; in which latter case, it is conceded that the English cases say tenants in common may join, while the New York cases hold they must.

According to the rule established by the English adjudicatives, if the lessors be joint tenants, all must join in the distress for rent,—5 Mod. Rep. 73 ; but one of several joint tenants might distrain in the name of all. 4 Bing. 562 ; (S. C. 13 Eng. C. L. R.) So likewise of parceners, who were considered in law as constituting but one heir. 5 Mod. 141 ; 1 Lord Ray. 64. But it is said, " tenants in common, as they have several titles, may distrain severally, each for his own share of the rent." Arch. on Landlord and Tenant 110 ; citing Whitley v. Roberts, McLel. & Y. 107 ; Willis v. Fletcher, Cro. Eliz. 530 ; and that one may distrain likewise in the name of all, if not forbidden by the others to do so, and may afterwards in replevin avow as to his own moiety, and make cognizance as bailiff for his co tenants as to their proportion of the rent. Arch. *supra ;* Cully v. Spearman, 2 H. Black. 386. Where a person holding under two tenants in common, paid all the rent to one, after notice by the other not to pay his moiety to any but himself, it was held by the court, that the latter, notwithstanding such payment, might distrain upon the tenant for his share of the rent. Harrison v. Barnby, 5 T. Rep. 246.

It seems to be further the well settled rule, that if tenants

in common join in making a lease, the instrument does not operate as a joint demise of the whole, and cannot be pleaded as such,—2 Wils. 232 ; Cro. Jac. 166 ; Comb. 213 ; Arch. L. & T. 10 ; 1 Adolp. & El. 750 ; but as to A's moiety, it is the lease of A, and the confirmation of B ; and as to B's moiety, it is the lease of B, and the confirmation of A. Rol. Abr. 877. Mr. Crabb, in his work on Real Property, holds the same doctrine. He says : " Tenants in common cannot properly join in making leases ; but if two tenants in common join in making leases for years, this shall be the lease of each for his own part, and the confirmation of the other." § 2318 a. He further says, that " although joint tenants must sue and be sued jointly, yet it is otherwise with tenants in common, for they are of several titles and the freehold is several." Ib. ; 2 Went. 214 ; Carth. 224. This rule is subject, however, to this qualification, that where the thing sued for is in its nature entire, and incapable of being severed, then, from the necessity of the case, they are permitted to join. Lit. § 314 ; 1 Inst. 197, a ; Crabb's Real Pr. § 2318, a.

Mr. Chitty, in his treatise on Pleading, vol. 1, p. 12, mar., says : " If tenants in common (who hold by distinct titles) jointly demise premises, reserving an entire rent, they may, and perhaps should, join in an action to recover it. If the rents be secured to them separately, in distinct parts, they must sue separately ; for in such case, as well their estate or interest, as the terms of the contract, are distinct and divisible ; and where there have been separate demises by tenants in common of their interest, or where tenants in common by conveyance become purchasers or landlords, they must sever in action for rent, or double damage," &c. See, also, Broom on Actions, mar. p. 28 ; 56 Law Lib. 46.

In this State, it appears to be well settled, that where property belonging to tenants in common is converted by one of them, or is sold by the sheriff or other person as the property of one of them, so as to amount to a conversion as respects the right of the other owner or owners, an action of trover lies, at the suit of such owner, to recover for the conversion ; or, if the property has been sold for cash, the tort may be waived, and *indebitatus assumpsit* may be maintained by the other owner for his proportion of the fund,—Parminter v.

Kelly, 18 Ala. Rep. 716; Smyth v. Tankersly, 20 Ala. Rep. 212; and in Price v. Pickett, 21 Ala. Rep. 741, we held, that tenants in common may sue jointly in assumpsit for money had and received to recover the rent; but we are not apprised of any decision of this court, which holds that, in the absence of a contract which fixes upon an entire rent to be paid to them jointly, they are compelled so to join.

We do not wish to go beyond the case made by the facts before us. Here there was no contract of lease by the tenants. Wiley, without authority, leases the land, and receives the rent, as we have said, in his own wrong. Each party has a right to waive his want of authority, confirm his act, and treat him, to the extent of his share of the rent, as holding money which, in justice and equity, he should pay over to him. We cannot subscribe to the doctrine, that either one of the four heirs of Robert Smith could have given Wiley a release for the whole. The case of Harrison v. Barnby, 5 T. R. 246, is, in our opinion, opposed to such a view; yet this would be the result, if all must necessarily join in an action to recover. We think the law implies an undertaking on Wiley's part, to pay to each his share; and as he volunteers to receive the money for each, he cannot complain that the law casts on him the duty of apportioning the funds, or subjects him, on his failure, to the suit of each party for his several portion of it. We have fully considered the cases cited by the counsel for the defendant in error, which seem to favor a different conclusion; but we are not disposed to follow them, as we think they cannot be supported on principle, and are opposed by the better English authorities, some of which we have cited.

As, therefore, the said Joseph W. Smith, after he arrived at age, had the right to confirm the act of Wiley, and elected to treat him as holding the proceeds of the rent of the land for him to the extent of his interest, and as he could have maintained *indebitatus assumpsit* for his share, we see no reason why it may not be set off in this action, as a mutual debt between the parties. This fund was received by Wiley without the pale of his guardianship; and now that the relation of guardian and ward has long since ceased, and having by his election, as indicated by his plea of set-off, chosen to

treat Wiley as his debtor, we see no substantial reason for sending the party into a court of equity, or for an account between them, as between guardian and ward, as indicated by the case of Sherman v. Ballou, 8 Cow. R. 304. This account has already been taken by the Orphans' Court, and the guardian has been discharged; and as his indebtedness, by reason of his receipt of these rents, depended upon the election of the said Joseph W. Smith to treat him as his debtor, which, as we before said, has occurred since his settlement as guardian, no valid reason exists why he should not be proceeded against for money had and received. Moneypenny v. Bristow, 2 Russ. & Myl. 117; Price v. Pickett, 21 Ala. Rep. 741.

Our conclusion is, that the proof rejected by the court tended to establish a valid set-off.

The judgment must therefore be reversed, and the cause remanded.