## JOHNSON'S ADM'R *vs.* JOHNSON.

[ACTION FOR MONEY HAD AND RECEIVED, BY WIFE'S ADMINISTRATOR AGAINST SUR-
VIVING HUSBAND.]

1. *Husband's marital rights.*—Money paid to the husband, during his wife's life-time, by the executors of her deceased father, on account of her interest as a legatee in the debts due to the estate, becomes the absolute property of the husband, unless the bequest created a separate estate in the wife; but the husband's marital rights do not attach to money collected by the executors after the death of the wife, although paid over to him by the executors.

2. *When action lies for money had and received.*—An action for money had and received lies against the husband, in favor of the personal representative of his deceased wife, to recover money paid over to him by the executors of the wife's father under a legacy to her, to which his marital rights never attached.

3. *When administrator cannot sue.*—If an executor makes an unauthorized sale of lands, as to which his testator died intestate, the administrator of one of the deceased heirs has no interest in the proceeds of sale, and cannot maintain an action for any portion thereof.

4. *Construction of will as to reversionary interest after widow's death.*—Where a testator directed "the remainder" of his estate, after payment of debts, to be equally divided among his wife and children; bequeathing the interest of the widow to her during life or widowhood; authorizing his executors, by a codicil, to sell any part of the real estate which they might deem advisable, and directing them to divide the proceeds of sale according to the main body of the will,—*held*, that the testator died intestate as to the reversionary interest in that part of the real estate which was allotted to the widow during life or widowhood, and that the executors had no authority to sell it after her death.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

THIS action was brought by the administrator of Mrs. Jemima G. Johnson, deceased, against William Johnson, her surviving husband, to recover certain moneys which the defendant had received, under a legacy to his wife, from the executors of her deceased father, George Phillips. The will of said George Phillips, with the codicil thereto, both dated on the 10th September, 1834, and admitted to probate on the 12th October, 1835, was in these words:

"It is my will and desire, that all my just debts be first paid, and the remainder of my estate, both real and personal, to be managed and distributed as follows: Within one year after my decease, the whole of my estate, both real and personal, to be appraised by disinterested persons, on oath, and to be equally divided amongst my beloved wife, Polly Phillips, and my eight children, share and share alike, viz., Matilda E. Blevins, (formerly Phillips,) William S. Phillips, Francis M. Phillips, Jemima G. Johnson, (formerly Phillips,) Mary Ann Phillips, Emily W. Phillips, and John B. Phillips. It is my will and desire, also, that the real estate that may be allotted by said division to my beloved wife shall include the mansion-house in which I now dwell, the *curtiledge* thereof, and a suitable quantity of my lands adjoining the same for cultivation; to hold the said real estate for and during the term of her natural life or widowhood, and after marriage with the consent of my executors, or a majority of them. And it is further my will and desire, that the shares or divisions (?) that may be allotted by said division to my different daughters shall vest absolutely in them and their respective heirs of their bodies forever. It is my will and desire, also, that the division and distribution of my estate above mentioned be made by my executrix and executors, or by commissioners appointed by the orphans' court. My son-in-law, William Blevins, in right of his wife Matilda, has received from me cash and property to the amount of $2,950; my son, William S. Phillips, has received from me cash and property to the amount of $2,500; my son, Francis M. Phillips, has received from me cash and property to the amount of $6,197; and my son-in-law,

William Johnson, has received from me, in right of his wife Jemima, cash and property to the amount of $2,463; which several amounts are to be deducted from their respective shares or dividends of my estate, but no interest is to be charged on the said several amounts. I do hereby nominate and appoint, as the executors of my last will and testament, my beloved wife Polly Phillips, my sons-in-law, William Blevins and William Johnson, and my sons, William S., Francis M., and George H. C. Phillips."

Codicil: "My executors, or a majority of them, may bargain, sell and grant such part or parts of my real estate as they, or a majority of them, may think it advisable to dispose of, at either public or private sale; and the proceeds of such sale shall be divided and distributed according to the provisions of the main body of my will."

"The plaintiff proved, that Mrs. Johnson married the defendant in 1826 or 1827, and died on the 28th May, 1837; that she had children living at the death of the said testator, her father, and at the time his will was executed, and left three children surviving her; that the testator's real and personal property was divided, by commissioners appointed by the orphans' court, in December, 1835, within a year after the testator's death, under the provisions of said will, and the share of each legatee was delivered to him or her respectively; that the testator had a large sum of money due to him from different persons, by notes and accounts, which, in the latter part of the year 1835, and immediately after said division and allotment, were placed by the other executors in the hands of said George C. Phillips, one of the executors, with the understanding that he would collect the same, and pay outstanding debts, and divide the overplus among the several legatees as they were respectively entitled to share in such collections; that said legacies were assented to, by all the executors, prior to December, 1835; that said George C. Phillips, prior to the death of Mrs. Johnson, did collect said money so far as the same could be collected, and with it paid the debts of the estate then unpaid, and the costs and expenses of the administration,

amounting to $500 or $600; that from time to time, when he had collected an amount that he thought worth dividing, he divided the same out amongst those to whom he thought it belonged under the will; and that in this manner, and under these circumstances, he paid to the defendant the several sums of money specified in the following receipts." (The receipts here set out are six in number, and amount to about $1885, the dates being May 31, 1837, June 25, 1840, April 29, 1842, May 31, 1842, June 13, 1844, and November 14, 1848.)

" The money specified in the receipt of April 29, 1842, was for money realized by the executors from the sale of lands mentioned in said will, in which Mrs. Polly Phillips had a life estate; which sale was made in 1842, after the death of Mrs. Johnson. George C. Phillips further testified, that he paid over the several sums of money specified in said receipts to the defendant, under the belief that he, as the husband of Mrs. Jemima Johnson, was entitled to receive it, although she was dead. The defendant then introduced in evidence two receipts given by him to the executors of said George Phillips, deceased," (which were dated respectively the 4th January, 1837, and the 10th May, 1837,) "and proved, that he received the money specified in said receipts prior to the death of his wife; that one of said receipts was for his wife's share of the crop of cotton raised in 1835, and the other was for her share of moneys collected on the said notes and accounts placed in the hands of said George C. Phillips, and which had been collected by him up to the date of said receipt."

" This being all the evidence, the court charged the jury, that if they believed the evidence, they must find for the defendant; to which charge the plaintiff excepted, and, in consequence thereof, took a nonsuit."

The charge of the court is now assigned as error, and motion is made to set aside the nonsuit.

Jno. T. Morgan, for the appellant.

Wm. M. Byrd, and Alex. White, *contra.*

WALKER, J.—In another case between the same parties, we decided, at the present term, that Mrs. Jemima Johnson did not take a separate estate under the will of her deceased father, George Phillips. That decision establishes the right of the appellee, Wm. Johnson, to retain all the money paid to him, *in the lifetime* of his deceased wife, on account of her interest as a legatee in the debts due to her deceased father. It also overthrows the argument in favor of the appellant's right to recover the other money in controversy, so far as it is based upon the idea of a separate estate in Mrs. Johnson. There are two distinct classes of funds, which were received by the appellee, after the death of his wife, from the executors of George Phillips, deceased. One class embraces the money derived from the collection of the debts due the deceased. The other embraces the money derived from the sale of the lands, in which the widow of George Phillips had a life estate. The rights of the parties in reference to these two different classes of funds must be separately considered.

At the division, had within a year after the testator's death, the notes and accounts belonging to the testator's estate were left undivided, and they were placed in the hands of one of the executors by the others, who was to collect the same, pay off the debts of the estate, and divide the remainder among the legatees. The legacies were assented to by all the executors, previous to December, 1835, when the division was had. The executor, from time to time, as he made collections, paid over to the appellee, on account of his wife's legacy. We have already decided, that the plaintiff had no right to recover the money paid to the appellee during his wife's lifetime, because, as to it, there was a plain and complete reduction to actual possession during the coverture.

As to the money received by the husband after the wife's death, it does not appear that any of it was collected and in the hands of the executor before her death. We think the probability is, that all the money received by the husband after the wife's death was collected after her death. We therefore leave undecided the question as to

the rights of the parties in any money collected by the executor before the death of Mrs. Johnson, and afterwards paid over to her husband.

As to money, received on the notes and accounts, which remained uncollected at the death of Mrs. Johnson, and which was paid to the executor after her death, and then by the executor paid to Johnson, we decide that the marital rights of Johnson never attached.

The notes and accounts were but choses in action, in which the defendant's (appellee's) wife had an interest. If she had been the exclusive owner, and the husband had had actual possession of them, they would have gone upon the wife's death to her administrator; for it is settled law in this State, that upon the wife's death, her choses in action do not go to the husband, as administrator or otherwise. The fact that she has only a partial interest in them, and that they are in the hands of an agent, instead of in actual possession, certainly adds nothing to the husband's right. So much of the money as was collected by the executor after the death of Mrs. Johnson, was a fund in which the defendant had no interest, and any payment to him out of it was wrongful; and the true owner, the plaintiff in this suit, has a right to recover it back from him. We think the decisions of this court fully sustain the position, that the administrator of Jemima Johnson's estate has a right to ratify the wrongful payment to the defendant, and sue him in an action for money had and received.—Vandyke v. The State, 24 Ala. 81; Prater v. Stinson and Wife, 26 Ala. 456; Bank v. Fry, 23 Ala. 770; Smith v. Wiley, 22 Ala. 396.

The court could not assume that none of the money paid over to the defendant was collected after the death of Mrs. Johnson; and there was, for that reason, error in the charge given.

The widow of the testator took a life estate in certain lands. After her death, those lands were sold by the executors, and the defendant took a share of the proceeds of the sale of the land. Notwithstanding this sale was made after the death of Mrs. Johnson, the plaintiff in this suit has no right to recover the money so received

by the defendant. The testator, George Phillips, died intestate as to the interest in that land remaining after the death of the widow. The land, therefore, descended to the heirs, and, after the widow's death, their right to the possession attached. As the land is not devised, and as it descended to the heirs, the sale by the executors was unauthorized, and the administrator of one of the deceased heirs could have no interest in the proceeds of the sale. The interest of Mrs. Johnson, upon her death, descended to her heirs, and those heirs are the persons injured by the unauthorized sale. Her administrator has no claim to the proceeds of the sale.

The conclusion that the plaintiff had no right to recover the proceeds of the sale of the land from the defendant, is a necessary sequence from the premises assumed, that the testator does not by his will bequeath the interest in the land allotted to the widow after her death. To prove the correctness of the premises assumed, it is necessary to examine the will.

In the first clause, the testator directs the payment of his debts. In the next, he directs that "the remainder of his estate be managed and distributed as follows;" and then proceeds to direct that the whole estate, both real and personal, be equally divided amongst his wife and eight children, and that his wife shall hold what may fall to her upon the division during her natural life or widowhood, and after her marriage with the consent of the executors. By a codicil, the executors are authorized to sell, either at public or private sale, any part of the real estate, which they may deem it advisable to sell; and they are directed to divide the proceeds according to the main body of the will. "The remainder of the property" and "the whole estate," expressions found in the second clause of the will, cannot include the reversionary interest, because the remainder of the property, the whole of the estate, is directed to be divided between the *widow* and the children. It would be unreasonable to construe the will as directing a participation by the widow in the reversionary interest after her death. Everything which is bequeathed in the second clause is to be divided within a year after the tes-

tator's death, and in the lifetime of the widow, who is to share equally with the children. By the whole of his estate, the testator meant that the entire specific property was to be taken into the division—not that the entire interest in the land bequeathed to the widow should be included in the division.

It is impossible to understand the authority to sell as including the reversionary interest, because the executors are required to divide the proceeds of the sale according to the provisions of the main body of the will. If it did, it would follow that the reversionary interest accruing after the widow's death would be equally divided between her and the children.

For the error in the charge pointed out, the nonsuit in this case is set aside, the judgment reversed, and the cause remanded.