## NELSON *vs.* GOREE'S ADM'R.

<table>
<tr><td>34</td><td>565</td></tr>
<tr><td>127</td><td>617</td></tr>
</table>

[CONTEST BETWEEN REPRESENTATIVES OF DECEASED HUSBAND AND WIFE, RESPECTING PROCEEDS OF SALE OF COTTON RAISED ON WIFE'S LANDS.]

1. *When interpleader lies at law.*—In an action by the husband's administrator against his commission-merchants to recover the proceeds of cotton shipped by the husband, and sold in his life-time, the defendants cannot, under section 2144 of the Code, ask the substitution of the wife's personal representative and distributee as a defendant in their stead; and although a different rule might possibly prevail, as to the proceeds of cotton received by the defendants after the husband's death, and sold by agreement between the respective representatives of the husband and wife; yet, if the action is brought to recover the entire proceeds of both sales, there can be no interpleader at all, since it is not permissible to divide the action into two distinct suits.

2. *Waiver of objection to irregular interpleader.*—If the plaintiff fails to object to the order of substitution at the time it is made, he cannot afterwards claim any advantage on account of its being irregular, or unauthorized.

8. *Conflict of laws as to respective rights of husband and wife in real and personal property.*—The respective rights of husband and wife, in and to lands situated in Mississippi, under a conveyance executed in Alabama, where all the parties to the deed then resided, are to be determined by the laws of Mississippi; but, as to slaves and personal property conveyed by the same deed, their rights are to be determined, as between themselves, by the laws of Alabama.

4. *Authority of foreign adjudged cases.*—Where the statutes of another State, but not the decisions of its courts construing those statutes, are offered in evidence in the courts of this State, our courts will consult those decisions to aid them in arriving at correct conclusions as to the construction of such foreign statutes, but will not regard them as binding and authoritative expositions of those statutes.

5. *Husband's rights in wife's real estate.*—Under the laws of Mississippi, (Hutchinson's Miss. Code, 496-8,) the husband becomes tenant by the curtesy in lands conveyed to his wife during coverture, on the birth of issue and subsequent death of the wife.

6. *Authority of father as natural guardian of child.*—A father has, as natural guardian of his infant child, no authority over the estate or effects of the child.

7. *Confusion of goods.*—It was contended in this case, that the plaintiff, having mingled his own goods with the defendant's, could not recover at all ; but the court, after citing the authorities bearing on the doctrine of confusion of goods, placed its decision on another ground.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon C. W. RAPIER.

THIS action was brought by L. N. Walthall, as the administrator of Robert T. Goree, deceased, against Marrast & Lee, commission-merchants in Mobile, to recover the sum of $1804 57, "the balance of the proceeds of one hundred and fourteen bales of cotton, sold by defendants as the factors of, and for and on account of said Robert T. Goree in his life-time ;" and was commenced on the 29th April, 1858. At the next ensuing term of the court, on the application of the defendants, A. S. Nelson, who was the administrator of Mrs. Caroline M. Goree, deceased, (the wife of plaintiff's intestate,) and also the guardian of Caroline N. Goree, (only infant daughter of said Robert T. and Caroline M. Goree, deceased,) was substituted as a defendant in their stead ; and this was done without objection on the part of the plaintiff, so far as the record discloses. At the same term of the court, by agreement between the plaintiff and the substituted defendant, the cause was submitted to the decision of the court, on the following agreed facts :

"Robert T. Goree, the plaintiff's intestate, married Caroline M. Nelson, the daughter of John Nelson, in Greene county, in Alabama, in October, 1852. They were all then residents of, and domiciled in the State of

Alabama, and so continued until their respective deaths, as hereinafter stated. On the 8th September, 1854, the said John Nelson, by deed bearing date that day, gave to his daughter, the said Caroline M., certain lands situated in Monroe county, Mississippi, for the time, and in the manner specified in said deed, a copy of which, marked ' A,' is hereto attached as a part of this agreed case ; and on the same day, by another deed bearing date on that day, and duly recorded, the said John Nelson gave to his said daughter, and to his son, Gideon E. Nelson, certain slaves then on said lands in Mississippi, in the proportion and manner, and for the time specified in said deed, a copy of which, marked 'B,' is hereto attached as a part of this agreed case. On the same day, and by deed of that date, duly recorded, the said John Nelson gave to his said son, Gideon E. Nelson, an undivided one-third interest in a tract of land in said Monroe county, Mississippi; a copy of which deed, marked 'C,' is hereto attached as a part of this agreed case. Under and by virtue of these several deeds, the said Robert T. Goree, as the husband of the said Caroline M., and the said Gideon E. Nelson, took the possession, control and management of said lands and slaves.

"John Nelson died on or about the 6th day of March, 1855. Caroline M. Goree died in Alabama, intestate, on the 29th October, 1856, leaving surviving her, her said husband, Robert T. Goree, and one child, named Caroline N. Goree, now an infant under fourteen years of age. On the 21st July, 1855, before the death of the said Caroline M., the said Gideon E. Nelson, by deed of that date duly recorded, conveyed to the said Caroline M. his interest in said lands and slaves, as shown by said deed, a copy of which, marked ' D,' is hereto attached as a part of this agreed case. The said Robert T. Goree did not, nor did any one else during his life-time, qualify as the administrator of the estate of his deceased wife, or as guardian of their said infant child, either in Alabama, or in Mississippi ; but the said Robert T., after the death of his said wife, continued in the control, possession and management of said lands and slaves, up to the time of his death.

The said Robert T. Goree died in Alabama, on the 22d January, 1858, intestate; and the plaintiff has since been duly appointed his administrator. Before the commencement of this suit, the defendant, A. S. Nelson, was duly appointed and qualified as administrator of the estate of Mrs. Caroline M. Goree, deceased, and also as guardian of the said·infant, Caroline N. Goree, both in Alabama and in Mississippi.

" During the year 1857, a crop of cotton was made by said slaves on said lands in Mississippi, under the orders, management and control of said Robert T. Goree, who caused one hundred and fourteen bales of said cotton to be shipped to Marrast & Lee, the original defendants in this suit, who were his factors and commission-merchants in Mobile, for sale on his account. They had paid and advanced to said Robert T. Goree, on account of said cotton, various sums of money, amounting in all, with interest, to the sum of $3,215 32. Ninety-six bales of said cotton were received and sold by said Marrast & Lee, in the life-time of said Robert T. Goree, for the net sum of $4,167 05. Eighteen bales, being the residue of said cotton, were shipped to said Marrast & Lee on the day before the death of said Robert T. Goree, but were not received or sold by them until after his death. This last mentioned cotton was afterwards sold by Marrast & Lee, in Mobile, Alabama, for the net sum of $872 84; and after deducting the expenses and commissions, and the moneys paid and advanced to the said Robert T. Goree, from the proceeds of sale of said cotton, there remained in the hands of said Marrast & Lee the sum of $1,824 57, balance of moneys received for said cotton, as shown by the account marked ' E,' which is hereto annexed as a part of this agreed case, and which is referred to as showing the dates, sales, charges and payments therein set forth. Before the sale of said last mentioned cotton, and after the appointment of said A. S. Nelson as administrator and guardian as aforesaid, he claimed and demanded of said Marrast & Lee the said cotton and its proceeds, and also the proceeds of the cotton first received and sold by them as aforesaid; and the plaintiff, after his appointment as

administrator of said Robert T. Goree, also claimed and demanded of them the proceeds of the sales of said cotton. Said Marrast & Lee refused to pay over to the plaintiff the said balance of the proceeds of said cotton, because it was claimed of them, adversely to the plaintiff, by the said A. S. Nelson as aforesaid ; and the last lot of cotton was sold by them by consent of both said Walthall and Nelson. This action is brought to recover said sum of $1,824 57.

"It is further agreed, that the statute laws of Mississippi, as printed in any volume published under the authority of the State, so far as the same can affect the rights of the parties to this suit, are to be considered as a part of this agreed case, and, as such, may be read from any volume published by authority of said State.

" If, upon these facts, the plaintiff is entitled to said money, or any part thereof, judgment is to be entered for him for said money, if he be entitled to the whole of it, or for such part of it as he may be entitled to ; but, if the plaintiff is not entitled to any part of said money, judgment is to be entered for the defendant for the whole of it, or for such part thereof as the plaintiff may not be entitled to."

The first deed from John Nelson, above referred to as exhibit " A," dated the 8th September, 1854, conveyed to Mrs. Caroline M. Goree, "for her own sole and separate use, support and benefit, for and during her natural life, and after her death to such child or children as she shall leave surviving her," the east half of section 23, and an undivided two-thirds part of section 17, in township 12, range 6, east, lying in Monroe county, Mississippi. The second deed of the same date, referred to as exhibit " B," conveyed about forty-six negroes, together with the future increase of the females thereof, to Gideon E. Nelson and Mrs. Caroline M. Goree, "in the following proportion, to-wit : one-third part thereof in value, and not in number, to the said Gideon E., and two-thirds thereof in value, but not in number, to the said Caroline M., to and for her sole and separate use, support and maintenance, for and during her natural life, and at her death to

37

her children, or such child as she shall leave surviving her;" " to be controlled and managed by the said Robert T. Goree, in trust for the use and benefit of the said Caroline M., for and during her natural life." The third deed of the same date, referred to as exhibit "C," conveyed to Gideon E. Nelson, the grantor's son, an undivided one-third part of said section 17 mentioned in the first deed; and the fourth deed, referred to as exhibit "D," is a conveyance from said Gideon E. Nelson and wife to Mrs. Caroline N. Goree, dated the 1st July, 1855, for an undivided one-third interest in said section 17, together with the slaves and personal property on the plantation of which it formed a part.

On these facts, the court rendered judgment for the plaintiff, for the entire amount in controversy; and its judgment is here assigned as error.

WM. G. JONES, for the appellant.—1. On the death of Mrs. Goree, 29th October, 1856, her life estate in the lands and slaves conveyed by her father's deeds terminated, and they instantly vested in her child, Caroline N. Goree. From that day, Robert T. Goree had no interest in them.

2. Under the laws of Mississippi, the undivided third of the land and slaves conveyed to Mrs. Goree by Gideon E. Nelson became her separate estate. Upon her death, the right to the negroes was in abeyance until an administrator of her estate was appointed, and they then vested in him. Robert T. Goree became tenant by the curtesy as to the undivided third of the lands conveyed by Gideon Nelson's deed.—For the laws of Mississippi then in force, see Hutchinson's Miss. Code, 496–98.

3. As to the lands and slaves which instantly passed to Mrs. Goree's child on her death, Robert F. Goree, in taking control of them without qualifying as guardian, was, in law, a mere trespasser, and liable to the guardian whenever one was appointed. If it be said that he was guardian by nature, that would only be in Alabama, where the person of the child was; and a guardian by nature only has a right to the custody of the minor's

person, and no right to hold or manage his property. 2 Kent's Com. 228, *et seq.*

4. Under the laws of Mississippi, cited above, the undivided third of the negroes conveyed by Gideon E. Nelson also passed to the child; or, if it was necessary that they should pass through an administration on Mrs. Goree's estate, the title to them was in abeyance until the appointment of the defendant as administrator. In holding possession of them, Goree was either a trespasser, or, at best, an executor *de son tort;* and in the latter character he is liable to an administrator subsequently appointed. 1 Lomax on Executors, 70, 89; Code, §§ 1928, 1933; Carpenter v. Going, 20 Ala. 587.

5. If Goree, as tenant by the curtesy of an undivided third of the lands, had an interest in the cotton made; yet, having mingled his own with the cotton which unquestionably belonged to the child, because raised on the lands of the child, and with the labor of slaves belonging to the child, he must lose all, unless he can clearly separate his own; it is a clear case of confusion of goods. 2 Kent's Com. 436–37. The facts show that Goree received more than one-third of the proceeds in his lifetime; the child should certainly have the residue.

6. The court below gave judgment for the plaintiff, on the ground that Marrast & Lee, having received the cotton from Goree, could not dispute the right of his administrator, nor maintain a bill of interpleader under the circumstances. There are several answers to this position. In the first place, section 2144 of the Code is remedial, and should receive a liberal construction, so as to advance the remedy. Its terms clearly embrace such a case as this, and there is nothing to restrict its operation to cases in which a bill of interpleader would previously lie. 2 Story's Equity, §§ 820, 823. In the next place, if the position be correct, the proper mode and time of raising the objection was when Marrast & Lee moved to be discharged, and that Nelson be substituted as a defendant in their stead. By failing to object to the order of substitution, and accepting and treating with Nelson as defendant, the plaintiff cannot now be heard to say that

he ought not to have been brought in. Moreover, if Nelson was not properly made a defendant, the judgment against him is erroneous for that reason, and ought to be reversed. In the third place, it is submitted that a bill of interpleader would lie, particularly as to the proceeds of the eighteen bales of cotton.—2 Story's Equity, § 801. If Goree held the cotton as guardian or agent of his child, and so sent it to Marrast & Lee, it is clearly a case for interpleader.

DANIEL CHANDLER, contra.—1. Section 2144 of the Code was intended to give a summary remedy to a party who could file a bill of interpleader; a remedy at law, speedy and cheap, instead of a protracted and expensive remedy in chancery.—Willard's Equity, 316. This being the case, the substituted defendant is subject only to the same liabilities, and entitled only to the same defenses as the original defendant. The failure to object to the order of substitution cannot affect this principle; it can neither diminish the rights of the plaintiff, nor increase the rights of the defendant who is substituted.

2. Parties who stand in a fiduciary relation to each other cannot interplead. To do so, they must be indifferent—bound to neither party by any contract, express or implied. It is the duty of the agent to respond to the demand of his principal, to pay over to him his money; and if any other person has a claim to it, he must go upon the principal, and not upon the agent.—Willard's Equity, 316; 11 Paige, 366; 12 Barbour, 456; Russell on Factors, (48 L. L.) 279. Under these authorities, it was the duty of Marrast & Lee to pay over the proceeds of the cotton to Goree, from whom they received it, or to his administrator; and they have nothing to do with the claim of a stranger. If Goree's administrator and a stranger had each demanded the money of them, they could not have asked a court of equity to assist, direct, or relieve them. Their only duty is to comply with their contract, and from this the court could not relieve them. Willard's Equity, 318; 2 Story's Equity, §§ 816–17; 11 Paige, 376; 7 Mees. & W. 215; 14 ib. 800.

3. Goree had an interest in the property, and a right to retain the possession of the land and negroes, and to make a crop and sell it; and he or his administrator is entitled to the money. He was not acting in his own wrong, and was not a trespasser on the rights of others.

4. Under the law of Mississippi, Goree had an undivided interest in the lands and negroes given to his wife. Revised Code of Miss. art. 28. This being the case, he had a right to manage the property.—3 How. (Miss.) Rep. 394.

5. A court of law cannot ascertain and separate Goree's interest under this deed from that of his wife's estate. There are debts to be paid, accounts to be settled, and conflicting interests to be adjusted; and a court of equity is alone competent to do these things.

6. The appellant is not without his remedy. In another proceeding against Goree's administrator, he may recover his share of the proceeds of the cotton; but it is confidently submitted that he cannot recover it in this action.

STONE, J.—Section 2144 of the Code reads as follows: "A defendant, against whom an action is pending upon any contract for the payment of money, may, at any time before issue joined, make affidavit in writing, that a person not a party to the action, and without collusion with him, claims the money in controversy, and deposit the money in court, praying an order that the person so claiming the money be substituted in his place. The court must thereupon direct notice to be given to the claimant of the money and the plaintiff, and may, in its discretion, after such notice has been served, make the order prayed for; and thereupon the substituted defendant stands in the place of the original defendant, and the latter is discharged from liability."

For appellee it is contended, that inasmuch as the sum of money which is the subject of this suit is the proceeds of cotton which Mr. Goree, in his life-time, had consigned to Messrs. Marrast & Lee, as his commission-merchants, and the money was in the hands of said commision-merchants as the agents of Mr. Goree, that the substituted

defendant, Mr. Nelson, can not make to this action any defense which Marrast & Lee could not have made, and that Marrast & Lee were estopped from setting up against their principal, Mr. Goree, any outstanding title in a third person.

This record nowhere discloses that the plaintiff interposed any objection in the court below to the substitution of Mr. Nelson for Messrs. Marrast & Lee, as defendant in this case. No exception was taken to the action of the court, which resulted in the dismissal from the record of the former defendants, and the formation of a new issue or suit, between Mr. Goree's administrator as plaintiff, and Mr. Nelson, as administrator of Mrs. Goree, and as guardian of the infant, Caroline N. Goree, as defendant. After this change of parties had taken place, the parties submitted their cause upon an agreed statement of facts, and a judgment was rendered by the circuit court. The record does not inform us upon what ground the judgment of the circuit court was rendered. We propose, in the first place, to construe the section of the Code above copied, and to define, so far as the wants of this case render it necessary, the practice to be pursued under said section.

Our labors in this connection are much alleviated by the fact, that we are not pioneers in an unexplored region. In the State of New York there is a statute, of which ours, so far as the question in this cause is concerned, is almost a literal copy. Its language is as follows :

" § 122. A defendant, against whom an action is pending upon a contract, or for specific real or personal property, may, at any time before answer, upon affidavit that a person, not a party to the action, and without collusion with him, makes against him a demand for the same debt or property, upon due notice to such person and the adverse party, apply to the court for an order to substitute such person in his place, and discharge him from liability to either party, on his depositing in court the amount of the debt, or delivering the property or its value to such person as the court may direct ; and the court may, in its

discretion, make the order."—Voorhies' New York Code, (5th ed.) 93 ; Willard's Eq. 315.

In the case of Sherman v. Partridge, 11 How. Pr. Rep. 154, Justice Duer, in delivering the opinion of the court, said : " The provisions in section .122 of the Code are founded upon the English statutes, 1st and 2d Will. IV, ch. 58." We have not access to the English statute, and hence must rely on the reference in Judge Duer's opinion for its contents.

In the case of Sherman v. Partridge, 11 How. Pr. Rep. 154, (S. C., 1 Abbott's Pr. Rep. 256,) the plaintiffs brought suit against defendants, and alleged that one Searle had sold logwood to the defendants, at the price and value of five hundred dollars; and that Searle, for a valuable con- sideration, had assigned and transferred to plaintiffs his said claim against defendants; and that in consideration of said assignment, the defendants had expressly prom- ised to pay the plaintiffs the amount they owed Searle. One of the defendants submitted an affidavit, stating that one Delafield, a person not a party to the action, and without collusion with the defendants, demanded of them the proceeds of the logwood, alleging that it belonged to him, and that Searle had not the possession as owner, nor any right or authority to sell the same or assign the price thereof. The motion was, to discharge the defendants, and to substitute Delafield in their stead.

On the trial of the motion, it appeared that the defend- ants had received the logwood from Searle ; and that Searle, afterwards, for a valuable consideration, had trans- ferred the claim to plaintiffs, and that defendants had promised the plaintiffs to pay them. The court overruled the motion to substitute, saying, among other things, " An order of interpleader, under section 122 of the Code, can only be properly made where the whole controversy turns upon the right of property—that is, upon the ques- tion whether the plaintiff in the suit, or the claimant whose substitution as the defendant is desired, is the true owner of the debt, fund, or other property for which judgment is demanded. When the plaintiff insists, as in the present case, that the defendant, by a personal contract or other-

wise, has rendered himself liable in all events for the debt sought to be recovered, and is precluded from setting up the title of a third person as a bar, it would be manifestly unjust to make the order, since it would deprive the plaintiff of his legal remedy, and might involve the sacrifice of his legal rights, without affording him any equivalent or compensation. *　　*　　* Nor is it only upon the ground that has been stated that I must refuse, by substituting Delafield, to discharge the defendants. Had this action been brought by Searle himself, or by the plaintiffs merely as assignees, I must still have said that the facts do not exhibit a case for an interpleader under a just construction of the Code. The plaintiffs seek to recover a debt arising upon contract; but Delafield is not ' a third person, nor a party to the suit making a demand for the *same debt*,' as the words of the Code require him to be, to justify an order for his substitution. As he denies that Searle had any authority to make the sale, his demand as owner is for the logwood itself, or its value, which may be greater or less than the price agreed to be paid; and at any rate, is not a debt, of which, as such, he may compel the payment." He then proceeded to state that the words of the English statute do not at all differ in meaning from those found in section 122 of the New York Code.

The English statute of 1st and 2d William IV., ch. 58, has been frequently construed; and the opinions of the English judges fully sustain those copied above from the opinion of Judge Duer.—See Lindsey v. Barron, 6 Man., Gr. & Scott, (60 Eng. Com. Law,) 291; Palouic v. Campbell, 2 Dowl. N. S. 397; Slaney v. Sidney, 14 Mees. & Wels. 800; also, Chamberlain v. O'Connor, 8 Howard's Prac. 45.

The authorities place the practice under the interpleader statutes in England and New York on the same principles as those which govern that remedy in equity. In Willard's Equity, pp. 313, *et seq.*, this subject is treated in connection with the New York statute; and it is obviously the opinion of that writer, that the statute, while it is in some respects less comprehensive than the remedy

by bill of interpleader in equity, is, in the matter we have been discussing, governed by the rules which uniformly obtain in the chancery court. Under those rules, Messrs. Marrast & Lee, as to the proceeds of the cotton sold before the death of Mr. Goree, could not have maintained a bill of interpleader; and hence had no authority to demand that Mr. Nelson should be substituted in their stead, as defendant in this action.—Gibson v. Goldthwaite, 7 Ala. 281; Marvin v. Elwood, 11 Paige, 365; Costigan v. Newland, 12 Barb. Sup. Ct. 456; Crawshat v. Thornton, 2 Myl. & Cr. 1; Croskey v. Mills, 1 Cr. Mees. & Ros. 298.

As to the eighteen bales of cotton received and sold by Marrast & Lee after the death of Mr. Goree, probably a different rule prevails. Those bales remained in kind, and unchanged in the hands of the bailees, until after the appointment of Mr. Walthall as administrator of Mr. Goree, and the appointment of Mr. Nelson as administrator of Mrs. Goree, and as guardian for the infant. It was then sold by Marrast & Lee, *by consent of both said Walthall and said Nelson.* In this, probably Messrs. Marrast & Lee could not with propriety be styled the agents or factors of the intestate, Mr. Goree, or of his administrator, Mr. Walthall. They were acting under the joint authority of both Walthall and Nelson. In Pearson v. Carden, 2 Russ. & Myl. 606, it was said, that when goods in the hands of a bailee have been subsequently so treated and dealt with by the bailor, as to constitute or acknowledge an apparent title to them in two distinct parties, the rule which prevents an agent from filing a bill of interpleader against his principal does not apply.

In the present case, it seems to us that, as to the proceeds of the eighteen bales of cotton, Messrs. Marrast & Lee, under the agreement of Messrs. Walthall and Nelson, filled much more nearly the relation of stakeholder to both, than of agent to either representative. But we need not decide this question.

It being shown above that, as to a part of the money in the hands of Messrs. Marrast & Lee, they were not in condition to call on their principal to interplead; and the entire sum being sued for in one action, it was not

permissible to divide that action into two distinct suits. The order of substitution, under section 2144 of the Code, must be an entirety. In this case, the rule declared in the case of Chamberlain v. O'Connor, 8 How. Pr. Rep. 45, would apply.

[2.] Notwithstanding the order of substitution in this case was irregular, and should not have been granted, the appellee, by failing to object to the action of the court, has forfeited all right to claim any advantage in consequence of the order. The cases cited above show, that the proper mode and time for raising the question of the right to substitute a new defendant, is when the motion is acted on. It is not a question of what defense the substituted defendant can make, after he is, by the order of the court, admitted into the place of the original defendant; but a question of right in the original defendant to have him substituted. When he becomes the defendant, he defends, not on the title of the original defendant, but on his own title. This is fully shown in the reasoning of Judge Duer *supra*, and in the other cases cited.

After the defendant was changed, the parties, by entering into an agreement with each other, forming an issue, and engaging in the trial of the cause; and this without objection by the plaintiff to the previous action of the court, must be regarded and treated as submitting their several claims on the fund to the relative strength of the titles they represented.—Bryan v. Wilson, 27 Ala. 208; Byrd v. McDaniel, 26 Ala. 582; Gager v. Gordon, 29 Ala. 341.

It is, then, our duty to determine the relative strength of the plaintiff's and defendant's titles.

The entire real and personal property, of which the cotton in controversy is part of the product, was acquired under contracts executed in Alabama, by parties resident in Alabama, after the intermarriage of Mr. and Mrs. Goree, and after the "woman's law" became operative. Mr. and Mrs. Goree were citizens of Alabama when the deeds were made, and continued so until their several

deaths. The infant ward has always been a resident of Alabama.

The two deeds of September 8, 1854, from the elder Nelson to Mrs. Goree, conveyed property, real and personal, to her sole and separate use during her life, and at her death, to such child or children as she should leave surviving her. The deed of July 21st, 1855, from the younger Nelson to Mrs. Goree, is expressed in general words of sale, without words of exclusion. Under the deeds from the elder Nelson, Mrs. Goree acquired the east half of section 23, township 12, range 6, 320 acres, and an undivided two-thirds of section 17, same township and range; also, an undivided two-thirds of the negro property. Under the deed from the younger Nelson, she acquired the remaining third of section 17, and of the slave property. The land is in the State of Mississippi, and the slaves were also there when they were acquired; and were still there at the death of Mr. Goree, in January, 1858. The cotton sold by Messrs. Marrast & Lee was grown on said lands, by the labor of said slaves. Mr. Goree was in control of said property until his death; but neither he nor any one else had been appointed administrator of Mrs. Goree, or guardian of the infant.

[3.] Real estate, as to its enjoyment and transmission, is governed by the law of the place where it is situated. Hence, the rights of the parties in and to the lands are determined by the laws of Mississippi.—Story's Confl. of Laws, §§ 382, 483, and notes; Smith v. Wiley, 22 Ala. 396; Shep. Dig. 476, § 13. Personal property has no local habitation. It pertains to the owner, wherever he may have his domicile. Saving the paramount rights of Mississippi creditors, if such there be, the succession of the personalty and its enjoyment must be, as between these parties, determined by the laws of Alabama. Story's Confl. of Laws, § 383; Turner v. Fenner, 19 Ala. 355; Inge v. Murphy, 10 Ala. 885.

[4.] In regard to the lands, the extent of Mr. Goree's claim to their enjoyment, after the death of Mrs. Goree, is, under the laws of Mississippi, with us a matter of difficult solution. Their statutes, providing for the separate

estates of married women, are substantially different from ours. They are in evidence in this record, and hence we are authorized—nay, required—to regard them. Their decisions are not in evidence, and we are only authorized to consult them as other reported cases, to aid us in arriving at correct conclusions upon their statute laws. Under these circumstances, we are not permitted to regard them as authoritative and binding expositions of their statutes. Walker v. Forbes, 31 Ala. 9; Bloodgood v. Grasey, 31 Ala. 579, and authorities cited; McArthur v. Carrie, 32 Ala.

Another embarrassment is thrown over this question, by the circumstance that *we* limit the operation of all our statutes in relation to the separate estates of married women to such estates as are made separate by law, while we can not shut our eyes to the fact that with them the rule seems to be different.—See Pickens v. Oliver, 29 Ala. 528; Smith v. Smith, 30 Ala. 642; Willis v. Cadenhead, 28 Ala. 472.

A still further obstacle is encountered in the conflict observable in their reported cases. We confess a decided preference for the conclusions attained in the cases of Marshall v. King, 24 Miss. 85; Lyon v. Knott, 26 *ib*. 548; Rabb v. Griffin, *ib*. 579, over that announced in the later case of Cameron v. Cameron, 29 Miss. 112, and apparently recognized in Bates v. Cotton, 32 Miss. 266.

[5.] There can be no question that Mr. Goree was tenant by the curtesy of an undivided third part of section 17, township 12, range 6.—Hutchison's Miss. Code, 498, §§ 2, 6, and act of 1846; see, also, act of 1839, pp. 496–7, §§ 1, 2, 3. Whether he was such tenant of the east half of section 23, and the other two-thirds of section 17, we deem it unnecessary, embarrassed and cramped in our investigations as we find ourselves, now to decide.—See Planters' Bank v. Davis, 31 Ala. 626, and authorities in opinion and briefs; Shep. Dig. 476, § 13.

Under the laws of Alabama, at the death of Mrs. Caroline M. Goree, an interest equal to two-thirds of the slaves passed directly, and without administration, to the infant, Caroline N. Goree, under the deed of the elder

Nelson. As to the remaining third of the slaves, Mrs. Goree dying intestate, the title remained in abeyance until the appointment of an administrator to her estate, when the legal title vested in him, with relation back to the time of her death, as to the rights of such administrator. No title whatever, as to any of the slaves, passed to Mr. Goree. He was not, without appointment, the personal representative of his deceased wife's estate, and hence he could not take as administrator. He could not, under our law, take an interest in the personalty, as a *quasi* tenant by the curtesy.

[6.] It may be supposed that, inasmuch as Mr. Goree, on the death of Mrs. Goree, became and was the natural guardian of his infant child, Caroline N. Goree, he, as such guardian, had the right to control and manage her property; and that his estate can not, in an action at law, be brought to account for the proceeds. If Mr. Goree, as guardian, was authorized to control and direct the labor of the slaves belonging to his infant child, his estate cannot, in this action, be brought to an account.—Chapman v. Chapman, 32 Ala. 106 ; Vincent v. Rogers, 30 Ala. 471. The argument is at fault, however, in supposing that Mr. Goree, as father and natural guardian, had any authority over the estate or effects of his infant child. Code of Ala. § 2014 ; Hutch. Code of Miss. 509 ; Alston v. Alston, at the last term ; 2 Kent's Com. m. pp. 220–1. This case, then, stands as if a mere stranger had employed these slaves in making the crop, a part of the proceeds of which is the subject of this suit. In such case, there could be no recovery, unless there is something in the fact that such stranger owned the land, or some part thereof, on which the cotton was grown.—Carpenter v. Going, 20 Ala. 587 ; Bailey v. Miller, 5 Ired. Law, 444 ; 1 Lomax on Ex'ors, 180 ; Code, § 1933 ; 1 Williams on Ex'ors, 211 ; Hill v. Henderson, 13 Sm. & Mar. 688.

[7.] It is contended for appellant, that the doctrine of confusion of goods applies to this case. Being, as stated above, unable to determine the extent of interest in the lands which Mr. Goree owned when this cotton was grown, we prefer not, at this time, to determine this question,

further than may be necessary to a correct result in this suit. The subject is treated in the following authorities: 2 Kent's Com. side pages 363-4-5; Lupton v. White, 15 Vesey, 432, 437; Attorney Gen. v. Fullerton, 2 Vesey & Beames, 263; Betts v. Lee, 5 Johns. 348; Hart v. Ten Eyck, 2 Johns. Ch. 62, 108; Pratt v. Bryant, 2 Ver. 333; Willard v. Rice, 11 Mctc. 493; Brackenridge v. Holland, 2 Blackf. 377; Hesseltine v. Stockwell, 30 Maine, 237; Bryant v. Ware, *ib.* 295; Dillingham v. Smith, *ib.* 370; Pulcifer v. Paige, 32 Maine, 404; Dunning v. Stearns, 9 Barb. 630.

We stated above that the rights of these parties must depend on the relative strength of the two titles. It follows that, to maintain this action, it rests with the plaintiff to show a better title at law to the money in the estate of Mr. Goree, than there is in the estate of Mrs. Goree, and in the minor. The question thus stated is easily answered, without asserting to the extent of some of the cases cited above the doctrine of confusion of property or goods. Conceding, for the purposes of this argument, that Mr. Goree was tenant by the curtesy of the entire tract of land during the year 1857, when the cotton was grown, it is nowhere shown that Mr. Goree has not already received and enjoyed his full share of the crop of that year. This, if the rule of confusion of goods be applicable, would forbid that the present suit should be maintained.

There is another principle, however, sufficiently comprehensive for the purposes of this case, and which, we think, is decisive of the plaintiff's right to recover in this action. Waiving, for the present, all consideration of the want of authority in Mr. Goree to employ these slaves in the cultivation of his own lands—even if we place the question on the doctrine of part-ownership, or tenancy in common, it does not appear that the estate of Mr. Goree has not received its full proportion of the money for which the cotton was sold. Thus considered, Mr. Goree has received and used near $3,000 of the money, while Mr. Nelson, in his double representative capacity, can receive by this suit less than $2,000. It should be

borne in mind, the latter is not suing to recover money, but is defending a suit which seeks to appropriate this balance of the fund. This places the plaintiff in a legal dilemma. If the doctrine of confusion of goods apply, his intestate created the confusion, and he must suffer the consequences.—See, in addition to the authorities above, Pearson v. Darrington, 32 Ala. 227, 3d head-note, p. 241. If, on the other hand, it be contended that a severance of the joint ownership has been effected by the sale of the cotton, and that either party can maintain an action against the other for his or her proportion of the money, it does not appear that the intestate of the plaintiff in this action had not enjoyed more than his share. See Perminter v. Kelly, 18 Ala. 716.

The reasons which influence us in withholding an expression of opinion on this question of confusion of goods, are partly stated above—namely, our inability, in the state of this record, to determine satisfactorily the extent of Mr. Goree's curtesy in the lands. To this we may add, that there will probably be other differences of opinion and of claim between these parties, growing out of the cotton crop of 1857. Should such contest arise, a fuller statement of the facts, as well as the laws of Mississippi as understood and expounded in their jurisprudence, will probably be brought before the court trying the questions.

It results from what we have said above, that the judgment of the circuit court is reversed, and the cause remanded.