# Stewart *v.* Sample.

## *Assumpsit.*

(Decided Feb. 26, 1910.   Rehearing denied June 30, 1910.
53 South. 182.)

1. *Interpleader; Statute; Effect.*—Section 6050, Code 1907, prescribes a short method of accomplishing the purpose of a bill of interpleader and applies only where the facts authorize resort to interpleader in equity.

2. *Same; Right to Relief; Conditions.*—The essential conditions to relief by interpleader are, 1st, the same thing, debt or duty must be claimed by both or all the parties against whom the relief is demanded, 2nd and adverse titles or claims must be dependant upon or derived from a common source.   3rd, The person asking relief must not have or claim any interest in the subject matter, and 4th, must have incurred no independent liability to either of the claimants but must stand perfectly indifferent between them as a mere stakeholder.

3. *Same; Right to Interpleader.*—Where a defendant tax collector had accepted an order directing him to pay out of commissions payable to the tax assessor a certain sum of money to the plaintiff and before the payment, the assessor dies and his administrator claims the commission from the tax collector on the ground that the order was contrary to public policy and void, the tax collector, when sued on the order, is authorized to pay the money into court, and interplead the administrator as provided by section 6050, Code 1907.

4. *Same; Equitable Proceedings; Statutory Proceedings; Time.*— It is not error to require parties to interplead before answer or decree pro confesso in a proceeding· for interpleader under the statute, though interpleader in equity cannot be so filed.

5. *Same; Ejectment.*—Where the affidavits for interpleader were filed in the statutory proceedings before issue joined, objection to the granting of order of interpleader may be made at the time the motion is acted on.

6. *Same; Demurrer.*—Since section 6050, does not require the defendant to set out the facts on which he claims the right to interplead the plaintiff is entitled to demur to the claim of the substituted defendant when filed.

7. *Same; Order; Term.*—Under section 6050, the court may make the order for substitution as soon as the required notice is given.

8. *Same; Usury.*—Where a plaintiff sues a tax collector on an accepted order for commissions belonging to the tax assessor, and the assessors' administrator claims the money on the ground that the assignment was void, and the collector interpleads the adminis-

[Stewart v. Sample.]

trator, the administrator was entitled to urge that the order was also usurious, the issue being as between the plaintiff and administrator, whether the money belonged to the plaintiff or to the estate of the assessor.

9. *Usury; Pleading.*—A plea by an administrator alleging that his intestate gave the order in question to the plaintiff for $575.00, but that the consideration for the order was $500.00 loaned by plaintiff to his intestate, and that the $75.00 was usurious interest, was a good plea as between the plaintiff and the administrator on the issues made by the interpleader.

10. *Assignments; Fees; Public Officer; Public Policy.*—The assignment by public officer of the fees or compensation to be earned in the future is contrary to public policy and void.

11. *Same; Commisisons; Completion of Duties.*—Under the provisions of sections 2097, 2120, 2121, 2122, 2126, Code 1907, the assessors' commissions are earned as to state taxes when the assessment is made, but as to county taxes they are not earned until he has not only made the assessment, but has also carried them up and extended them on the assessment book, so that an assignment of his commission after the assessment but before the extension of the county taxes upon the assessment book was valid only as to the commissions earned as to the state taxes.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS. W. WERT.

Action by R. H. Sample against W. H. Drinkhard upon an accepted order drawn by the tax assessor assigning his commissions as such, in which S. E. Stewart as administrator of the tax assessor was brought in and substituted as a defendant by statutory interpleader. Judgment for plaintiff and the substituted defendant appeals. Reversed and remanded.

BROWN & KYLE, and B. F. GREEN, for appellant. The object and purpose of section 6050, Code 1907, is to provide a cheap and expeditious means by which interpleader could be had at law, the statute is governed by the same equitable principles as would be an interpleader in equity.—*Nelson v. Goree,* 34 Ala. 343; *Johnson v. Maxey,* 43 Ala. 521; *Coleman v. Chambers,* 127 Ala. 618. The first thing to be determined is whether under the facts a bill will lie.—7 N. J. E. 131; 46 N. J. E. 113; 40 N. J. E. 106; 6 N. Y. Ch. 340; 52 Am. St.

Rep. 784; 23 Cyc. 31. The court cannot order an interpleader until the defendant has filed an answer or a decree pro confesso has been rendered.—*Crass v. M. & C. R. R. Co.*, 96 Ala. 447. It is not until a substituted defendant has propounded his claim that the necessity arises for the court to decide whether an interpleader will lie, for until then the original defendant has admitted the cause of action as stated by defendant to be true. —*Johnson v. Maxey*, 43 Ala. 538. In a bill seeking an interpleader the time to demur is before the court had entered a decree requiring them to interplead.—*Crass v. M. & C. R. R. Co., supra;* 40 N. J. E. 106; 46 N. J. E. 113; 6 N. Y. Ch. 340; 52 Am. St. Rep. 784. The proper time to enter objection to interpleader is when the motion is acted on.—*Nelson v. Goree, supra; Sherman v. Partridge,* 11 How. 154. The contract declared on in this case was void as against public policy.—*Sloss v. Hewlett,* 81 Ala. 266; *Robertson v. Robinson,* 65 Ala. 610; 4 Cyc. 19. At the time the order was given the fees and commission of the assessor could not have been earned and fixed.—Sec. 3956, Code 1896; *Perry and Hale Counties v. R. R. Co.,* 65 Ala. 295; *State Auditor v. Jackson County,* 65 Ala. 159. The burden of proof was on the plaintiff.—*Hensley v. Orendorff,* 44 So. 870. Drinkhard confessed that so far as he was concerned he had no defense against plaintiff's claim but this binds nobody but him, and if Harris were alive he could set up the usury in the contract, and under the statute his administrator can also do it.—*Johnson v. Maxey, supra; Moses v. Home B. & L. Assn.,* 100 Ala. 465; *Butts v. Broughton,* 72 Ala. 297. Even a surety can set up usury.—*Bray v. Brown,* 22 Ala. 274.

JOHN R. SAMPLE, and WERT & LYNN, for appellee. This is not a proper case for interpleader.—*Johnson*

*v. Maxey,* 43 Ala. 539; 135 Am. Dec. 702; 66 L. R. A. 924; 132 Mass. 410; 4 Cyc. 90; 23 Cyc. 7. The substituted defendant could not deny the liability of the original defendant to pay said order and could not litigate the question.—*Johnson v. Maxey, supra.* The tax assessor had already earned the fees and commissions when he gave the order, and hence, the assignment is not void.—Sections 3925, 3927, 3930, 3939, 3948 and 3949, Code 1896; *Perry County v. Selma M. & M. R. R. Co.,* 58 Ala. 560; *Sloss v. Hewlett,* 81 Ala. 270; 85 S. W. 697; 41 Am. Dec. 443.

SIMPSON, J.—The suit was brought by the appellee against W. H. Drinkard. The basis of the various counts of the complaint was an order from C. G. Harris (appellant's intestate), who was tax assessor, dated January 5, 1906, on said Drinkard, who was tax collector, requesting him to pay plaintiff $575, in which order it was stated "The intention is for you to pay this note out of the first money collected of mine," and said Drinkard wrote thereon, "Jan. 16, 1906, I agree to pay this as directed," signing his name. The complaint alleges that said C. G. Harris was tax assessor of Morgan county, and had made the assessment of taxes for the year 1906, and was entitled to his commissions for said work, which were due him out of the first taxes collected in October, 1906; that said defendant was tax collector of said county, and was due Harris his commissions on or before November 1, 1906, to an amount far exceeding the amount of said order, also that the defendant has collected said money, etc. After the filing of the complaint, and before any plea had been filed, to wit, on October 12, 1907, said defendant filed his affidavit, under the statute, praying that the appellant, as administrator, be notified to come in and defend the action,

and that defendant deposited the money ($620) in court. The appellant (substituted defendant) came in, and in writing filed his claim that the money deposited by the defendant belonged to the estate of his decedent, by reason of the fact that the order drawn by said decedent was an attempt to assign his fees, as tax assessor, then unearned; that this was known to the plaintiff and defendant, at the time of drawing the order, and the same is contrary to public policy and void. It also sets up the fact that the claim is usurious, in that it was for $500 in money borrowed, the additional $75 being usurious.

Section 6050 of the Code of 1907 is a short method for accomplishing the purposes of a bill of interpleader in equity, and applies only when the facts would authorize resort to a bill of interpleader in equity.—*Nelson v. Goree,* 34 Ala. 565; *Johnson v. Maxey,* 43 Ala. 521, 541; *Jackson v. Jackson,* 84 Ala. 343, 4 South. 174; *Jackson v. Jackson,* 91 Ala. 292, 10 South. 31; *Crass v. M. & C. R.,* 96 Ala. 447, 11 South. 480.

The essential conditions of a bill of interpleader are: "(1) The same thing, debt or duty must be claimed by both or all the parties against whom the relief is demanded; (2) all adverse titles or claims must be dependent, or be derived from a common source; (3) the person asking relief—the plaintiff—must not have nor claim any interest in the subject-matter; (4) he must have incurred no independent liability to either of the claimants; that is, he must stand perfectly indifferent between them, in the position merely as a stakeholder." —5 Pomeroy's Eq. Jur. (1 Eq. Remedies) § 43. In this case there can be no question that both parties are claiming the same debt or duty, to wit, the money, in the hands of Drinkard, which he had collected for Harris. The adverse claims, also, are dependent upon or derived

[Stewart v. Sample.]

from a common source, to wit, the obligation of Drinkard to pay this money to the party to whom it belongs. It is true the obligation to the plaintiff is by written contract, and that to the substituted defendant is implied, but they are both dependent upon the fact that Drinkard has collected the money of Harris, and is under contract, either expressed or implied, to pay it over. The person asking the relief, to wit, the defendant, Drinkard, has not incurred any independent liability. His acceptance did not bind him absolutely to pay the money, but only to pay it over, as the money of Harris, when collected; nor does he claim any interest in or right to the money, but is a mere stakeholder, ready to pay the money to whichever party is entitled to it, and has paid it into court. So this is a proper case for interpleader. This court has held that it is error for a court of equity to require parties to interplead before the filing of answer, or a decree pro confesso (*Crass v. M. & C. R.*, 96 Ala. 447, 454, 11 South. 480), but it will be noted that section 6050 departs from that rule, and, in this statutory proceeding, requires the affidavit to be made "at any time before issue joined."

Evidently objection may be made to the granting of the order of interpleader at the time the motion is acted on. When the affidavit is filed, if it shows, upon its face, that it is not a case for interpleader, the plaintiff may present to the court any reasons which he may desire to present, to show to the court that it is not a proper case for interpleader, and, if the court so holds, it should refuse then to grant the order, notifying the substituted defendant to come in and propound his claim, but, inasmuch as the statute does not require the defendant to set out the facts, on which he claims the right to interpleader, the plaintiff must have an opportunity to present the point that it is not a case

for interpleader, when the facts are made known. There-
fore this court properly held that the plaintiff' could
demur to the claim propounded by the substituted de-
fendant.—*Coleman v. Chambers*, 127 Ala. 615, 620, 29
South. 58.

The appellant objects to the statment in the case just
cited "that when the requisite affidavit has been made,
accompanied with the proper prayer for order for the
claimant to come in and defend, and the money is depos·
ited in court, and the claimant voluntarily appears to
defend, as was the case here, the court was bound to
make the order of substitution of the new, and discharge
of the old defendant." He invokes the analogy of a
bill for interpleader in equity, to wit, that the time to
demur is before the order of interpleader is made. That
might be highly proper in a proceeding in equity, where-
in the complainant in his bill sets out a statement of the
facts, on which the right to interpleader is claimed, so
that the plaintiff then has the information upon which
to base his demurrer, but, as before stated, the statute
authorizes the affidavit to be made at any time before
issue joined, and proceeds to state that "after such no-
tice is given the court may make an order that such
person be substituted as a party to·the suit in place of
the defendant," etc. Whether "may" means "must," or
not, the court is certainly authorized by the terms of the
statute to make the order as soon as the notice is given.
Under the practice, as above suggested, if it be a case
in which the original defendant has bound himself inde-
pendently, that fact is necessarily known to the plain-
tiff, and he can offer his objection to· the order before it
is made. If that be not the case, then it becomes a mere
matter between the plaintiff and the substituted de-
fendant, the original defendant having confessed his
liability to pay the money and deposited it in court,

[Stewart v. Sample.]

and it is proper that when the substituted defendant propounds his claim, the plaintiff may meet it, by demurrer or any other pleading.

We do not understand the case of *Coleman v. Chambers* to hold that, in every case the court must make the order as soon as the affidavit is filed, but only that, in that case, in which the plaintiff had not interposed any objection, the order must be made. If the demurrer is sustained on the ground that it is not a proper case for interpleader, then it necessarily results that the substituted defendant has no right to claim the funds, and the judgement would be for the plaintiff. If, on the other hand, it is shown to be a proper case for interpleader, and the substituted defendant shows that the funds belong to him, the judgment will be for the substituted defendant.

In the case of *Nelson v. Goree's A'dm'r*, 34 Ala. 565, 578, it is stated that the substituted defendant was brought in, without objection on the part of the plaintiff, and the court says: "Notwithstanding the order of substitution in this case was irregular. and should not have been granted, the appellee (who was the plaintiff), by failing to object to the action of the court, has forfeited all right to claim any advantage in consequence of the order. The cases cited above show that the proper mode and time for raising the question of the right to substitute a new defendant, is when the motion is acted on. It is not a question of what defense the substituted defendant can make, after he is, by the order of the court, admitted into the place of the original defendant; but a question of right in the original defendant to have him substituted. When he becomes the defendant, he defends, not on the title of the original defendant, but on his own title."

In that case, and in the New York case therein followed, the ground upon which it was contended that the substitution should not have been made was that the original defendants were personally bound to the plaintiff, to account for the proceeds of cotton which had been shipped to them by the plaintiff, and the decision of the court is in accordance with the practice above suggested, to wit, that the plaintiff should have made that objection before the order of substitution was made.

In the case of *Johnson v. Maxey, for Use, etc.,* 43 Ala. 521, the suit was brought by Maxey against the railroad company on an award as to damages to land, the railroad company deposited the money in court and made affidavit that Johnson claimed the money, Johnson appeared, and on his motion was made a party defendant. The court held that the affidavit of the railroad company, with the deposit of the money, was a conclusive admission of said company of all the material allegations of the complainant, and that when said Johnson came into court, the only matter which could be litigated was whether the money brought into court belonged to him or to the plaintiff (pages 538, 539), that he could not deny the liability of the railroad company to pay the award. The court also held that it was the duty of the substituted defendant to propound his claim with such certainty and fullness that the plaintiff might plead to or answer it, and, inasmuch as said substituted defendant did not so propound his claim, but undertook to demur to the original complaint, which he could not do, the court properly overruled it, and though the substituted defendant improperly pleaded the general issue to the original complaint and the court improperly permitted the cause to be tried on that issue, and a verdict was rendered against the substituted defendant, he

[Stewart v. Sample.]

could not complain, because he had not tendered a proper issue. The court was of the opinion that it was not a proper case for interpleader, that the verdict did not decide whether the substituted defendant was entitled to the money, because he did not, by proper pleading, present that issue. Nevertheless the facts showed that the money belonged to the plaintiff, as the award had so decided, and if the substituted defendant was the owner of the land, his remedy would have been against the railroad company, and not by claiming the money which had been awarded to another, and therefore the substituted defendant had nothing to complain of.

It seems to this court that the practice herein suggested is in harmony with our previous decisions, and that it protects the interests of all parties. In accordance with what has been said, we hold that it was proper to allow the plaintiff to demur to the claim stated in writing by the substituted defendant.

We do not understand this demurrer as being to the cause of action in the original complaint, but it goes merely to the right of the substituted defendant to be heard as a claimant to the money which is confessed to be due by the original defendant. From what has been said it results that said grounds of demurrer numbered 1 to 21, inclusive, to the claim of the substituted defendant, were properly overruled. As to those causes which attempt to raise the point that Drinkard was independently liable, if there was any force in them, those matters should have been presented before the order of substitution was made, and said causes could have been properly stricken.

Without attempting the tedious task of following the intricate maze of demurrers and other pleadings, the only issues remaining, according to the pleadings and charges, and argued by the counsel are, first, whether

the assignment by Harris of the money arising from his
fees were contrary to public policy and void, thus ren-
dering his estate entitled to the money in the hands of
Drinkard and paid into court, and, second, as to the
question of usury. The assignment, by a public officer,
of his fees or compensation, to be earned in the future,
is declared to be contrary to public policy and void.
While this principle has been doubted and criticised
by some authorities, the reasoning of it is that by sanc-
tioning such contracts the efficiency of the officer, in the
discharge of his duties, might be impaired, but it is
equally recognized by the authorities, and the ratio
legis shows the correctness of the principle, that it is
not contrary to public policy for a public officer to as-
sign his fees or compensation after he has earned the
same.—*Scloss v. Hewlett*, 81 Ala. 266, 270, 1 South.
263; 4 Cyc. 20; Greenwood on Public Policy, p. 353.
The reason given is that by being permitted to assign
his salary fees, or compensation (for the authorities
state they all stand on the same basis), the efficiency of
the officer, in the discharge of his duties, might be im-
paired; but after he has performed the work for which
said compensation is allowed, such reason does not ap-
ply, and the assignment is valid.

It is insisted by the appellant that this principle can-
not aid the appellee in this case, because there were
other duties yet to be performed by the assessor, after
he had assessed the taxes, and that the amount of his
compensation, for the county assessment, could not be
fixed until the levy was made by the county commis-
sioners for the current year. There seems to be some
confusion in the statutes on this subject. Section 2120
of the Code of 1907 (section 3948, Code 1896), provid-
ing how the assessment shall be made requires the as-
sessor to place on the tax lists when he makes the as-

sessment (commencing in October) not only the description and value of the property but also "the amount of state, county and special taxes"; and section 2121 (section 3949, Code 1896) requires him to deliver these lists with the book of assessments to the court of county commissioners on or before the first Monday in June, which would seem to indicate that the county tax had been previously levied.

Section 2122 (section 3950, Code 1896) requires him to make in a book a condensed statement of all assessments made, showing the description and value of lands assessed, with the value and amount of state taxes. This book is to be delivered to the probate judge on or before the first Monday in May, section 2123.

Section 2126 (section 3956, Code 1896) provides that, after the county taxes have been levied, the assessor shall compute the amount thereof owing by each taxpayer and enter the same on the book of assessment.

Section 2097, Code 1907 (section 3925, Code 1896), provides that "The tax assessor shall be entitled to receive from the tax collector, out of the first moneys collected for the state * * * the following commission on the state taxes: * * * He shall also be entitled to receive, from the tax collector, the same rate of commissions on the amount of county taxes * * * regularly assessed, carried up or extended on the assessment book," etc.

The evident intention of the last-cited section is that, as to state taxes, when the assessor has made the assessment nothing remains for him to do, and he has earned his commissions. The same is true as to any fees which he has earned.

Though section 2122, Code 1907 (section 3950, Code 1896), requires the assessor to make a condensed statement of all taxes assessed during the year, etc., the next

section requires said book to be delivered to the probate judge on or before the first Monday in May, yet this is simply one of the general official duties of the assessor, and his right to commissions is not made dependent upon this, as it is in relation to county taxes, by section 2097, above cited. If he should fail to discharge his duty in that respect, there are other remedies, besides withholding his commissions earned for the assessment of state taxes.

As to county taxes, the question is whether, at that time, he had done all that his duties require to earn his commissions. The strongest case in that direction, which we have found, is the early English case of *Alexander v. The Duke of Wellington* (2 Rus. & Mylne, 35), 6 Eng. Ch. Rep. 383, which involved the right to assign a claim for prize money for vessels captured. The vessels had been captured, but the constitutional legal authority had not prepared a scheme for the distribution thereof, and the court held that the assignment was valid, the evident reasoning being that the claimant had done all that he was required to do to earn the prize money, and the mere fact that the amount to be paid him was still to be ascertained, did not render it any less true that he had earned the compensation.

The evidence in this case shows that, up to January 5, 1906, the amount due the assessor for fees earned was $7.50, the amount of commissions due for state taxes was $418.37, and the amount of commissions on county taxes, assessed to that date, was $354.13. From the section cited it will be seen that his commissions on county taxes were not earned until he had not only made the assessments, but had also carried them up and extended them on the assessment book. Consequently, his commissions on the county taxes had not been earn-

ed at the time the order was given, and, as to that amount, the order is invalid.

It results that there was no error in refusing to give the general charge in favor of the substituted defendant, while the general charge in favor of the plaintiff would be correct, with an explanatory charge as to the amount which the plaintiff was entitled to recover.

The fifth claim set up by the substituted defendant is that when C. G. Harris, the deceased tax assessor, gave to appellee the order in question for $575, the consideration for said order was $500 loaned by appellee to said Harris, and that the $75 was usurious interest, and it is alleged that said appellee is not entitled to said $75. It is true that, in this proceeding, the merits of the claim against Drinkard cannot be inquired into, for he has confessed that he owes the money, but the question to be decided is, to whom the money paid into court by Drinkard belongs. The money belonged primarily to Harris, and so much of it as is legally subject to the order belongs to the appellee, while any part of said money that is not subject to said order belongs to the estate of Harris. If a part of it is not subject to that order, by reason of the order's being usurious, to that extent the amount belongs to the estate of Harris, and should be deducted from the amount apparently due on the order.

In the case of *Holt v. Thurman et al.* 111 Ky. 84, 63 S. W. 280, 98 Am. St. Rep. 399, which the appellee considers directly in point to the effect that the transaction in this case was a sale, and that usury cannot be considered, the facts were that the party had actually sold his prospective salary, at a discount of 10 per cent., and while the court does remark that it was a sale and not a loan, the question of usury was not in it, yet the claim was disallowed.

In the present case there was no sale, but simply an order, which was accepted, and which is sued on in this case. Consequently the court erred in sustaining the demurrer to the fifth count of the claim of the substituted defendant.

The judgment of the court is reversed and the cause remanded.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON, McCLELLAN, MAYFIELD, SAYRE, and EVANS, JJ., concur.

McCLELLAN, J. (concurring).—I am in accord with my Brothers on the substantive law of the case, and hence concur in the reversal of the judgment below; but I cannot agree that the application of the rule announced in respect of the assignment, by a public officer, of his compensation will allow appellee to recover commissions of the assessor, whether the basis thereof be the assessment for state or county taxes, or both. The order having been given in January, 1906, the following statutes governing the duties of the tax assessor show conclusively, it seems to me, that at that time Harris had not fully performed the duties of his office whereupon his right to commissions for both state and county assessment must, under the rule declared, have wholly depended.—Code 1896, §§ 3925, 3930, 3950, 3951, 3952, 3953, 3956, 3979, 3980, 3985, 3986.

Independent of all else, the four last-cited statutes demonstrate, beyond all doubt, that the assessor had not fully performed his duty in the assessment of either state or county taxes, or both, until he had met all the requirements therein mentioned or defined, and which could not be performed until months after the attempted assignment. His commissions, on both state and

[Lamar v. King.]

county values, are based upon the corrected and approved assessment book. This cannot exist until the assessor makes it, until it is filed, accompanied by the assessment lists, with the judge of probate, and until the court of county commissioners has passed upon the book and it has become the tax collector's warrant for the collection of the taxes therein enumerated.

The other statutes noted show several other duties, consistent with a harmonious system, resting on the assessor, which he must have performed before he has so completed his service as to be entitled to assign his compensation therefor, viz., his commissions.