(76 South. 370)

## MARSH v. MUTUAL LIFE INS. CO.
· (4 Div. 715.)

(Supreme Court of Alabama.   June 14, 1917.)

INTERPLEADER ⬅➡10—WHEN ALLOWED.

The assignee of a life policy sued the insurance company which prior to such time had given a check to the beneficiary, the wife of insured. Payment was stopped on notice of claim of assignee. *Held* that the giving of the check was not an irrevocable acknowledgment of the wife's title to the money so as to bar the company from filing an interpleader under Code 1907, § 6050.

· Appeal from Circuit Court, Coffee County; A. B. Foster, Judge.

Suit by the Elba Bank & Trust Company against the Mutual Life Insurance Company, in which Eva C. Marsh was interpleaded. Defendant Marsh appealed from an order overruling her motion to set aside the judgment requiring her to interplead, and as an alternative asked for a writ of mandamus in case appeal did not lie. Affirmed.

M. A. Owen, of Elba, and J. A. Carnley, of Enterprise, for appellant.  W. O. Mulkey, of Geneva, for appellee.

THOMAS, J. The two causes, appeal in main cause and petition for mandamus were submitted as one.

The facts are, that on February 26, 1916, the Elba Bank & Trust Company sued the Mutual Life Insurance Company of New York on a certain policy of insurance, numbered 1861904, whereby the defendant, on the 25th day of August, 1910, insured the life of Tavner Marsh, such policy being payable to Eva C. Marsh. The defendant company filed, under section 6050 of the Code, its interpleader, praying that said Marsh be required to propound her claim to the moneys, the proceeds of the policy sued on, and litigate in said suit with defendant her right thereto. Prior to the suit (on February 4, 1916) the Mutual Life Insurance Company, on receipt of proof of the death of insured, delivered its check to Eva C. Marsh for the amount due thereunder, marking paid the policy, but, on notice of claim of the assignment of the policy to the Elba Bank & Trust Company, stopped payment of this check. The circuit court required said Marsh to become a party defendant, as prayed in defendant company's interpleader, and from this judgment she appealed. Defendant, Marsh, then moved to set aside the judgment requiring her to interplead, and, the motion being overruled, applied for mandamus to compel the circuit court to vacate the order requiring her so to interplead. As an exhibit to the interpleader, there was filed an affidavit of said Marsh, of date March 20, 1916, containing the following recitals:

"That she is the widow of T. Marsh, deceased, whose full name was Tavner Marsh; that at the time of his death her said husband owned policy No. 1861904, in the Mutual Life Insurance Company of New York, for the sum of $2,000, which was made payable to affiant as the widow of said T. Marsh, in the event of his death before that of affiant. Affiant further says on oath that she had never transferred, assigned, conveyed, or hypothecated her interest in or rights to said policy to the Elba Bank & Trust Company, of Elba, Ala., nor to any other person, firm, or corporation, and she says that if the said Elba Bank & Trust Company holds any such transfer or assignment executed by her, that the same was obtained from her by fraud and misrepresentations on the part of said Bank & Trust Company, its officers, agents, or employés, and was without her knowledge or consent, and therefore fraudulent and void."

Another exhibit filed to the interpleader was the following letter:

"New Brockton, Alabama, 3/7/1916.   The Mutual Life Insurance Company of New York—Dear Sirs: I am writing you in regards to policy No. 1861904 on the life of Tavner Marsh, as you know the check has been held up. I have not signed any of my rights away and will start legal proceedings if it cannot be settled without it. Will advise you to settle with no one else. Yours res., Mrs. Eva C. Marsh."

By these exhibits it is shown that defendant Marsh claimed an interest in and right to the proceeds of the policy in question, on their respective dates, March 7, and 20, 1916,

after suit was brought on the policy, as the beneficiary therein. This fact is further shown by her answer. The fact of delivery of the check for the balance of the company's indebtedness under said policy to the beneficiary, from the company's general office in New York, notwithstanding notification of the claim of an alleged assignee made to the company's local agent in Alabama, would not prevent the company (the rights of no innocent third parties intervening) from stopping the payment of the check by its New York bank and requiring the beneficiary under the policy and the Elba Bank & Trust Company, the alleged assignee, to litigate the bona fides of their respective claims.

The interpleader was within the provisions of the statute as construed by this court. Code of 1907, § 6050; Johnson v. Maxey, 43 Ala. 521, 541; Stewart v. Sample, 168 Ala. 270, 274, 53 South. 182; Coleman v. Chambers, 127 Ala. 615, 29 South. 58; Sherman v. Patridge, 11 How. Prac. (N. Y.) 154, 158.

From the current of all the authorities, the equitable rule of interpleader depends upon the existence of the four elements regarded as its essential conditions:

"(1) The same thing, debt, or duty must be claimed by both or all the parties against whom the relief is demanded. (2) All their adverse titles or claims must be dependent, or be derived from a common source. (3) The person asking the relief—the plaintiff [petitioner for interpleader]—must not have nor claim any interest in the subject-matter. (4) He must have incurred no independent liability to either of the claimants; that is, he must stand perfectly indifferent between them, in the position merely of a stakeholder." 4 Pom. Eq. Jur. §§ 1323–1326.

Was the giving of the check by the insurance company to Mrs. Marsh, under the circumstances set out in the pleading, the incurring of an independent liability, to one of the claimants, that would bind the company as upon an independent undertaking, and without reference to its possible liability to the Elba Bank & Trust Company, after notice and before payment of said check? We are of the opinion that the giving of the check by the insurer to Mrs. Marsh was not, "upon the general nature of the entire transaction," such an irrevocable acknowledgement of her title to the fund as to bind the maker to independent liability to her, irrespective of the known claims of the Elba Bank & Trust Company upon the same subject-matter or fund, before payment of the check.

The practical and legal import of the check was no more than a direction or request to the bank to pay a certain sum of money to the person named as payee. The money or fund evidenced by the check did not, by the mere fact of the issuance of the check, become the absolute property of the payee and pass beyond the control of the depositor drawer. A check, before presentation, does not operate per se as an assignment to the payee of the money for which it is drawn (O'Connor v. Mechanics' Bank, 124 N. Y. 324, 26 N. E. 816), and when not accepted constitutes no transfer of moneys to the credit of the holder. Florence Min. Co. v. Brown, 124 U. S. 385, 8 Sup. Ct. 531, 31 L. Ed. 424; Pullen v. Placer County Bank, 138 Cal. 169, 66 Pac. 740, 71 Pac. 83, 94 Am. St. Rep. 19; 11 Rose's Notes U. S. Rep. 477 (for authorities). This is beyond controversy, for our statute declares that a check in and of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and that the bank is not liable to the holder unless and until it accepts or certifies the check. Code, § 5136.

When the check was drawn by the company and delivered to Mrs. Marsh, under the averred circumstances, it did not operate as a payment or discharge of the contract obligation of the Mutual Life Insurance Company under the policy. Acquittance could result only by the payment of that order to the beneficiary or the assignee of the policy, as the case might be.

The pleading and the proof show that the identical fund or debt was and is claimed by both the plaintiff trust company and the defendant Marsh. True, the appellant petitioner insists that this debt or fund is no longer evidenced by the policy of insurance, but has assumed the form of an undisputed liability evidenced by the company's check. It would hardly be insisted by the defendant, Marsh, that the check was a payment of the insurance and a release of the company, if the bank on which the check was drawn were found to be without funds upon presentation of the check thereto for payment. In such a case, the liability of the insurance company on the policy would still be enforced. After all that may be said of the fund or debt in controversy, it is essentially the same as when it matured—it has not been transmuted into a debt or fund the result of an independent liability of the insurance company to Mrs. Marsh.

Courts of equity are generally liberal in protecting mere trustees or stakeholders against conflicting claims to the money or things in which the trustee or stakeholder has no interest. Bell v. Hunt, 3 Barb. Ch. (N. Y.) 391; Farley v. Blood, 30 N. H. 363; Lozier v. Van Saun, 3 N. J. Eq. (2 Greene's Ch.) 325. This modern tendency toward liberality of construction of the rules of interpleader, to enforce the justice of the case, is well recognized in School Dist. v. Weston, 31 Mich. 85. The court said:

"Upon the great weight of authority, both English and American, a much more liberal and reasonable rule has been established; and bills of interpleader have been frequently maintained, where the several claimants, instead of claiming the whole fund or matter in dispute, have claimed different portions of the fund, when the aggregate of all the claims exceeded the full amount of the fund, and the claimant being, as in the present case, virtually a stakeholder, and unable to determine to whom, or in what portions, the payments should be made."

This case is incorporated in the notes to 4 Pom. Eq. Jur. § 1323.

The Mutual Life Insurance Company, as the stakeholder of the identical fun'd claimed respectively by the plaintiff trust company and by Mrs. Marsh, will be protected by the statutory interpleader on bringing the moneys in question into a court of competent jurisdiction, where the two claimants may litigate, without injustice or embarrassment to the Life Insurance Company, their respective right or interest therein or thereto.

The defendant's counsel seem to have questioned their right of appeal from the order of interplea'der, by asking for the alternative writ of mandamus in case the appeal would not lie. If this were not an appealable order or judgment, man'damus would probably be the appropriate remedy to review the same. But this is a question we need not decide, for the reason that the ju'dgment complained of was properly rendered.

The judgment of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.